J-S06021-20

2020 PA Super 146

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JEREMY SEAN BRIGHT :
:
Appellant : No. 2075 EDA 2019

Appeal from the Order Entered June 12, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002705-2018

BEFORE: LAZARUS, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

OPINION BY McLAUGHLIN, J.: **FILED JUNE 22, 2020**

Jeremy Sean Bright appeals from the judgment of sentence entered following his conviction for Possession with Intent to Deliver a Controlled Substance ("PWID").[1] He challenges the trial court's denial of his request for the identities of two confidential informants ("CIs") and argues that the verdict was against the weight of the evidence. We affirm.

The trial court summarized the facts of this case as follows:

> On September 16, 2017, Officers Dennis Leighton and Edmond O'Brien supervised a buy-walk between [Bright] and two confidential informants on the 1200 block of Marie Lowe Drive in Bristol Township, Bucks County. Prior to the buy, police officers searched the confidential informant and their vehicle and provided the confidential informants with $80 of documented buy money. Officer Leighton traveled to Marie Lowe Drive and parked his vehicle in a position where he would have a clear view of the scene of the buy. Officer O'Brien followed the confidential informants to the area of the buy in a separate vehicle until he reached the

---

[1] 35 P.S. § 780-113(a)(30).

intersection of Schumacher Drive and Beaver Dam Road. At that point, Officer Leighton confirmed over the radio that he could see the confidential informants so Officer O'Brien left the area to avoid detection.

[Bright] was standing in the roadway in front of 1223 Marie Lowe Drive near his blue Chevy Impala when the confidential informants arrived. From his vehicle, Officer Leighton watched the confidential informants park behind [Bright's] Impala. Officer Leighton testified that one of the confidential informants exited the car and interacted briefly with [Bright] before returning to the car. [Bright] then walked around to the trunk of the Impala, placed something on the curb next to the confidential informants' car, and motioned to one of the confidential informants, who then got out of the car and retrieved what [Bright] had left on the curb. Officer Leighton had an unobstructed view of the buy and he testified that he did not lose sight of either of the confidential informants during the entire transaction.

Officer O'Brien resumed his surveillance at the intersection of Schumacher Drive and Beaver Dam Road after the confidential informants left the area of the buy. When they returned to the secure location, the confidential informants underwent another search and provided Officer O'Brien with the 1.91 grams of loose crack cocaine that they had purchased from [Bright].

Trial Ct. Op., filed 08/06/19, at 1-2.

Prior to trial, Bright filed a motion to compel the identity of the CIs. The trial court held a hearing where Officer Dennis Leighton testified. He said that at the time of the buy, he had known Bright for more than 10 years, since he arrested him in 2006 for an unrelated offense, and had had numerous contacts with him since that time. N.T., 10/12/18, at 8, 9. Regarding the drug transaction between Bright and the CI, Officer Leighton testified, "I can tell you without a doubt, 100 percent, that day I saw one person interact with my informants and that was [Bright]." *Id.* at 31. Defense counsel asserted a

defense of mistaken identity and argued that "[t]here's a black male in the area that looks just like my client. . . . The only people who can truly identify him who handed him the drugs are the confidential informants." *Id.* at 36, 37. Counsel provided no evidence to support the assertion that there was a black male in the area who resembled Bright. The trial court denied the motion and Bright proceeded to a jury trial. The jury convicted Bright of the above offense and the trial court sentenced him to 18 to 36 months' incarceration. Bright filed a post-sentence motion challenging the weight of the evidence, which the trial court denied. This timely appeal followed.

Bright raises the following issues before this Court:

1. Did the pre-trial court abuse its discretion in failing to disclose the identity of the confidential informant [*sic*] to the defense?

2. Was the jury's verdict of guilty on all charges against the clear weight of the evidence that the Commonwealth failed to establish that [Bright] sold illegal narcotics to a confidential informant [*sic*][?]

Bright's Br. at 5.

"'Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion.'" *Commonwealth v. Washington*, 63 A.3d 797, 801 (Pa.Super. 2013) (quoting *Commonwealth v. Withrow*, 932 A.2d 138, 140 (Pa.Super. 2007)). The Commonwealth has a qualified privilege not to disclose the identity of a CI. *See Withrow*, 932 A.2d at 140-41. Thus, where a defendant seeks a CI's identity, the defendant must first show "that [the]

request for disclosure is reasonable and that the information sought to be obtained through disclosure is material to the defense." *Id.* at 141. Thus, although the defendant need not predict absolutely what the CI would say, the defendant must "demonstrate at least a reasonable possibility the informant's testimony would exonerate him." *Id.*

It is only after the defendant carries this initial burden does the trial court then exercise its discretion and "determine whether the information is to be revealed." *Id.* A defendant fails to carry the initial burden to show that the CI's identity would be material to a defense of mistaken identity where the record contains no evidentiary basis on which the defendant could assert the defense. *See Commonwealth v. Marsh*, 997 A.2d 318, 322 (Pa. 2010) (opinion announcing the judgment of the court); *id.* at 325 (Saylor, J., concurring).[2]

Here, Bright claims that the trial court erred in denying his motion to disclose the identity of the CI because "Bright was not arrested until six months after the lone officer's observation. His trial testimony did not occur until more than one year later in October of 2018 raising the possibility that the officer's memory of the incident was mistaken." Bright's Br. at 11. He maintains that because of this, he has "shown that the identity of the

_____

[2] Although the lead opinion in *Marsh* was a plurality of three justices, the concurring opinion agreed with the lead opinion that appellant had failed to meet his initial burden because of "the lack of record support[.]" *Marsh*, 997 A.2d at 325 (Saylor, J., concurring). The concurring opinion was joined by the participating justices who had not joined the lead opinion, such that the *Marsh* Court's decision on this point is controlling precedent.

confidential informants was material to his defense and his request was reasonable." *Id.* Bright also asserts that the facts in ***Commonwealth v. Carter***, 233 A.2d 284 (Pa. 1967), are "analogous." *Id.* at 10.

In ***Carter***, the Commonwealth charged Carter with "felonious possession and sale of narcotic drugs[.]" ***Carter***, 233 A.2d at 285. Other than Carter, there were only two witnesses to the sale: the CI and an undercover officer. *Id.* at 286. The undercover officer testified about the sale and identified Carter. A federal agent conducting remote surveillance testified that he could not see the transaction, but did identify Carter. *Id.* The undercover officer and the federal agent did not encounter Carter again until Carter's arrest six months later, and they based their identification of Carter "on a single meeting." *Id.* On cross-examination of the undercover officer, defense counsel asked the officer for the identity of the CI. ***See id.*** The Commonwealth objected and the court sustained the objection. ***See id.*** Our Supreme Court reversed, concluding that under the circumstances, the Commonwealth should have disclosed the name of the CI, noting "the limited opportunity" the undercover officer and the federal agent had to observe the seller. *Id.* at 287.

This case is easily distinguishable. Defense counsel provided no evidentiary support for his claim of "a black male in the area that looks just like my client." Moreover, Officer Leighton did not base his identification of Bright "on a single meeting." He testified that he had known Bright for more than 10 years and had had numerous contacts with Bright over the years. In view of this testimony, which the trial court credited, Bright failed to make the

requisite threshold showing of materiality and reasonableness. ***See Marsh***, 997 A.2d at 322.[3] In short, Bright "failed to offer an explanation of how the [CI's] testimony, in light of Officer Leighton's observation of the delivery, could have aided in his defense." TCO at 5, 6.

> Officer Leighton, who has conducted hundreds of controlled buys, testified at both the pre-trial hearing and at trial that he personally observed [Bright] take something out of the trunk of his car and place it on the curb next to the confidential informants' car for one of the confidential informants to retrieve. Officer Leighton's view of the buy was unobstructed and he testified that he is "certain" [Bright] was the seller. Officer Leighton was able to identity [Bright] as the seller because he has known [Bright] for over ten years and has interacted with [Bright] on more than one occasion in the over ten years that he has known him.

Trial Ct. Op. at 5 (citations to notes of testimony omitted). The trial court did not abuse its discretion in denying Bright's motion to disclose the identity of the CIs.

Next, Bright argues the verdict was against the weight of the evidence. He claims that "the trial court abused its discretion in denying the weight of evidence motion because of the many facts which point to [Bright's] innocence." Bright's Br. at 13. These facts include that "[t]he officer's observation from 206 yards was obstructed" and "[Officer Leighton's] claim that he used binoculars to enhance his view is undercut by failure to add this important detail to either his testimony at a prior hearing or in his police report." ***Id.*** at 15. He also alleges that there was "no physical evidence" to

---

[3] ***See also Marsh***, 997 A.2d at 325 (Saylor, J., concurring).

support Officer Leighton's claim that he observed a drug sale between Bright and the CI. *Id.*

Our standard of review regarding a claim challenging the weight of the evidence is as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations and emphasis omitted). "[T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Roberts*, 133 A.3d 759, 767 (Pa.Super. 2016) (citation omitted). Additionally, the Commonwealth "may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 526 (Pa.Super. 2016) (citation omitted).

Here, the trial court rejected Bright's weight claim, concluding, "The evidence presented at trial shows that [Bright] did, in fact, knowingly deliver cocaine to a confidential informant and nothing in the record shocks this

Court's sense of justice or cries out for a new trial in order to permit justice to

prevail." Trial Ct. Op. at 8.

> Officer Leighton testified that he witnessed the actual transfer of crack cocaine on September 26, 2017:
>
>> One of the informants had exited the vehicle, approached Mr. Bright on foot, who was standing in the roadway. They had a brief interaction.
>>
>> At that time, the informant then walked back to the informant vehicle and reentered the vehicle. Mr. Bright then walked to the area of the trunk of the blue Chevy Impala. My vantage point at this time is I'm looking at the front of the vehicle. So when Mr. Bright walked behind the vehicle and raises the trunk, I can only see the top of his head or the top of the raised trunk. Mr. Bright does- did – he remained there in front of the trunk for approximately maybe a minute or two minutes.
>>
>> And at that time, he walked over to the passenger side of the vehicle at the curb, bent over, motioned to the CI vehicle, the CI exited the vehicle, walked up, bent down in the area where I had saw Mr. Bright bend down, then turned around and walked back to the CI vehicle. At that time, the CI vehicle immediately left the area.
>>
>> What I can tell you is that the entire time that the CI vehicle was there, no other persons approached that vehicle, and the informant then exited the vehicle, had contact with no other people or interacted with no other people other than Mr. Bright.

> The jury chose to believe Officer Leighton's testimony and we found no basis to overturn the jury's decision. Further, lab testing of the drugs that the police recovered from the confidential informants confirmed to be crack cocaine.

*Id.* at 7-8 (citations to notes of testimony and case law omitted).

Bright's weight claim lacks merit. The trial court did not abuse its discretion in concluding that the verdict was not objectively shocking. ***See Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000). We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/20

- 9 -