J-S31023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RUDOLPH CHURCHILL | : | |
| | : | |
| Appellant | : | No. 2326 EDA 2021 |

Appeal from the PCRA Order Entered October 19, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007442-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RUDOLPH CHURCHILL | : | |
| | : | |
| Appellant | : | No. 2327 EDA 2021 |

Appeal from the PCRA Order Entered October 19, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007443-2014

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JANUARY 12, 2023**

Appellant Rudolph Churchill appeals from the order denying his timely Post Conviction Relief Act[1] (PCRA) petition. Appellant argues that his trial counsel was ineffective for failing to request a jury instruction for third-degree

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

murder. He also alleges that trial counsel was ineffective for failing to object to an allegedly inflammatory hypothetical question from the trial court and the Commonwealth's reference to that hypothetical during closing arguments. Following our review, we affirm.

The PCRA court summarized the facts of this case as follows:

> This PCRA stems from the March 1989 murder of Ruby Ellis and the April 1989 murder of Cheryl Hanible which remained unsolved for over two decades. The Philadelphia Police Department Office of Forensic Science received a grant to research, evaluate, and analyze cold cases to determine if advancements in DNA testing would enable retesting of evidence containing DNA to develop DNA profiles in order to aid in the identification of perpetrators of cold cases. Evidence collected in the murders of Ruby Ellis and Cheryl Hanible was reanalyzed as part of this grant. [Appellant] became a suspect in both murders after a match was made in the Combined DNA Index System between his DNA and DNA evidence obtained at both crime scenes. Buccal swabs were taken from [Appellant] pursuant to a search warrant on August 1, 2013. After the results of the DNA testing were received, an arrest warrant for [Appellant] was prepared and [Appellant] was arrested on March 19, 2014.

PCRA Ct. Op., 1/31/22, at 2-3.

Appellant was charged with first-degree murder, possession of an instrument of crime, rape, and involuntary deviate sexual intercourse (IDSI) at trial court Docket Nos. 7443-2014 and 7442-2014.[2] On January 1, 2015, the trial court issued an order consolidating both cases for trial. Following a jury trial, Appellant was convicted of two counts of first-degree murder and two counts of possession of an instrument of crime on May 2, 2016. That

---

[2] 18 Pa.C.S. §§ 2502, 907(a), 3121(1), and 3123(1), respectively.

same day, Appellant was sentenced to two consecutive life sentences without parole for the two first-degree murder convictions and two consecutive sentences of two-and-one-half to five years for possession of an instrument of crime.

On May 8, 2016, Appellant filed timely post-sentence motions at both docket numbers in which he challenged the sufficiency and the weight of the evidence. The trial court denied Appellant's post-sentence motions on July 13, 2016. Appellant filed a timely notice of appeal listing both trial court docket numbers, and this Court affirmed Appellant's judgment of sentence on January 30, 2018. *See Commonwealth v. Churchill*, 2280 EDA 2016, 2018 WL 617073 (Pa. Super. filed Jan. 30, 2018) (*Churchill I*) (unpublished mem.). Appellant did not file a timely petition for allowance of appeal with our Supreme Court. *See* Pa.R.A.P. 1113(a) (providing that an appellant has thirty days to file a petition for allowance of appeal with our Supreme Court).

Appellant filed a timely *pro se* PCRA petition at each docket on May 31, 2018. The PCRA court appointed counsel who filed an amended petition seeking reinstatement of Appellant's right to file a petition for allowance of appeal with our Supreme Court. On July 18, 2019, the PCRA court reinstated Appellant's right to file a petition for allowance of appeal *nunc pro tunc*.[3] On

---

[3] The trial court's July 18, 2019 docket entry states as follows: "Order Granting Post-Conviction Relief Act Petition[.] Docket: PCRA granted. The petitioner's appellate rights are reinstated to seek allocator." Trial Ct. Docket, 7442-2014, at 42 (some formatting altered); *see also* Trial Ct. Docket, 7443-2014, at 40
*(Footnote Continued Next Page)*

August 19, 2019, Appellant filed a petition for allowance of appeal *nunc pro tunc* with our Supreme Court. Our Supreme Court denied the petition on January 22, 2020. **Commonwealth v. Churchill**, 223 A.3d 664 (Pa. 2020) (**Churchill II**). Appellant subsequently filed a petition for writ of *certiorari*, which the United States Supreme Court denied on June 15, 2020. **Churchill v. Pennsylvania**, --- U.S. ---, 141 S.Ct. 119, 207 L.Ed.2d 1057 (2020) (**Churchill III**).

Appellant filed the instant timely first[4] *pro se* PCRA petition at each trial court docket on August 3, 2020. PCRA counsel subsequently filed amended petition on Appellant's behalf. The PCRA court filed a Pa.R.Crim.P. Rule 907 notice of intent to dismiss Appellant's petition on July 28, 2021. After Appellant filed a response, the PCRA court dismissed the petition on October 19, 2021. Appellant filed notices of appeal on November 12, 2021, and the PCRA court issued Pa.R.A.P. Rule 1925(b) order bearing both docket numbers on November 23, 2021.[5] Appellant filed Rule 1925(b) statements at each trial

---

(same). Neither the orders nor the transcript of the July 18, 2019 hearing were included in the certified record.

[4] A PCRA petition filed after the reinstatement of an appellant's direct appeal rights *nunc pro tunc* is considered a first PCRA petition for timeliness purposes. **See Commonwealth v. Turner**, 73 A.3d 1283, 1286 (Pa. Super. 2013) (explaining "when a PCRA petitioner's direct appeal rights are reinstated *nunc pro tunc* in his first PCRA petition, a subsequent PCRA petition will be considered a first PCRA petition for timeliness purposes" (citations and footnote omitted)).

[5] After Appellant filed an appeal at each trial court docket, this Court consolidated the appeals pursuant to Pa.R.A.P. 513 on December 1, 2021.

court docket on December 12, 2021. The PCRA court filed a single Pa.R.A.P.

Rule 1925(a) opinion bearing both docket numbers on January 31, 2022.

On appeal, Appellant raises the following issues for review, which we

restate as follows:

1. Did the PCRA court err and/or abuse its discretion when it denied Appellant's petition under the PCRA seeking a new trial based upon a claim that trial counsel was ineffective for failing to request that the jury be charged with respect to third-degree murder?

2. Did the PCRA court err and/or abuse its discretion when it denied Appellant's petition under the PCRA seeking a new trial based upon a claim that trial counsel was ineffective for failing to object to a highly prejudicial and inflammatory hypothetical question posed by the trial court to the defense's DNA expert witness?

3. Did the PCRA court err and/or abuse its discretion when it denied Appellant's petition under the PCRA seeking a new trial based upon a claim that trial counsel was ineffective for failing to object to the prosecutor's reference during her closing argument to the trial court's prejudicial and inflammatory hypothetical question?

Appellant's Brief at 4.

**Third-Degree Murder Jury Instruction**

In his first issue, Appellant argues that trial counsel was ineffective for

failing to request a jury instruction for third-degree murder. Appellant's Brief

at 28. Appellant contends that his claim has arguable merit because trial

counsel's actions "resulted in the loss of opportunity to have a sentence

imposed which would require eligibility for parole at some point." *Id.* at 29.

With respect to the reasonable basis prong, Appellant avers that trial counsel

did not explain why she failed to seek the instruction at issue and that, in any event, a third-degree murder instruction would have had "no conceivable adverse impact" on Appellant's trial. *Id.* at 30-31. Finally, Appellant argues that he was prejudiced by trial counsel's inaction because Appellant's alleged confession did not establish premeditation and the jury was unable to conclude that either victim was raped or sexually assaulted. *Id.* at 32-33. Therefore, Appellant concludes that there was a reasonable probability that the jury could have returned a verdict of murder in the third degree. *Id.*

Our review of the denial of PCRA relief is limited to "whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Mitchell*, 105 A.3d 1257, 1265 (Pa. 2014) (*Mitchell II*) (citation omitted); *see also Commonwealth v. Davis*, 262 A.3d 589, 595 (Pa. Super. 2021) (stating that "[t]his Court grants great deference to the findings of the PCRA court if the record contains any support for those findings" (citation omitted)).

We presume that the petitioner's counsel was effective. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). Further, it is well settled that "counsel cannot be deemed ineffective for failing to raise a meritless claim." *Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015).

This Court has explained:

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> *    *    *
>
> Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted and formatting altered).

> When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

***Commonwealth v. Fletcher***, 968 A.2d 759, 792 (Pa. 2009).

It is well settled that "[a] trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict." ***Commonwealth v.***

- 7 -

*Browdie*, 671 A.2d 668, 673–74 (Pa. 1996).  Further, this Court has explained:

> A jury charge on a lesser-included offense is permissible so long as it does not offend the evidence presented, *i.e.*, there is **some disputed evidence concerning an element of the greater charge** or the undisputed evidence is capable of more than one rational inference.  If a rational jury, given the record evidence, can find the defendant guilty of the lesser-included offense, the court should instruct the jury on the law of the lesser-included offense.

*Commonwealth v. Houck*, 102 A.3d 443, 451 (Pa. Super. 2014) (citations omitted and emphasis in original).

"To convict a defendant of first-degree murder, the jury must find that (1) a human being was unlawfully killed; (2) the defendant is responsible for the killing; and (3) the defendant acted with a specific intent to kill." *Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008) (citations omitted).  "Specific intent to kill can be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." *Id.* (citation omitted).

> When there is no direct evidence of intent to kill, the fact-finder may glean the necessary intent from the act itself and from all surrounding circumstances.  **Specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another**.  Death caused by strangulation is sufficient to infer the specific intent required for a conviction of first[-]degree murder.

*Commonwealth v. Hawkins*, 701 A.2d 492, 500 (Pa. 1997) (citations omitted and emphasis added); *see also Commonwealth v. Mitchell*, 902

A.2d 430, 445 (Pa. 2006) (**Mitchell I**) (stating that "evidence of manual strangulation is also sufficient to establish specific intent required for first-degree murder" (citation omitted)).

This Court has stated:

Murder in the third degree is an unlawful killing with malice **but without the specific intent to kill**.  18 Pa.C.S. § 2502(c). Malice is defined as:

A wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.  Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.

Malice may be inferred by considering the totality of the circumstances.

**Commonwealth v. Dunphy**, 20 A.3d 1215, 1219 (Pa. Super. 2011) (some citations omitted, formatting altered, and emphasis added); **see also Commonwealth v. Santos**, 876 A.2d 360, 364 (Pa. 2005) (explaining that "malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm" (citation omitted and formatting altered)).

Here, the PCRA court addressed Appellant's claim as follows:

[Appellant's] claim fails because he was not prejudiced by counsel's failure to request a jury instruction on third-degree murder.  First, the central question in this case was the identity of the killer, not the degree of murder.  The facts and evidence before the jury did not entitle [Appellant] to an instruction for third-degree murder as the case so clearly established first-degree

murder. Both victims were found with ligatures wrapped tightly around their necks at least three times and tied in a bow in the center of their throat. Victim [Hanible] was found with a gym sock stuffed into her mouth. This evidence alone is enough to establish the specific intent to kill. Yet, even more, Richard Simmons testified that while incarcerated with [Appellant], [Appellant] spoke of two murders he committed back when he was "hustling." [Appellant] told Simmons that one of murders happened because "some things had went bad, and she scratched him." [N.T., 4/26/16, at 122].

Even so, assuming, *arguendo*, that trial counsel had requested the jury be instructed on third-degree murder and that [Appellant] had been convicted of third-degree murder for each decedent, he would not have received any additional benefit. [Appellant] was sentenced to an aggregate life sentence without the possibility of parole, as mandated by Pennsylvania law. 18 Pa.C.S. § 1102(a)(1). Pennsylvania law also mandates that an individual who is convicted of two counts of third-degree murder be sentenced to life imprisonment without the possibility of parole. *See* 42 Pa.C.S. § 9715(a). Therefore, either verdict would have resulted in the same outcome for [Appellant] and [Appellant] was not prejudiced by counsel's failure to request the jury be instructed on third[-]degree murder.

PCRA Ct. Op. at 4-5 (citation omitted).

Following our review of the record, we conclude that the PCRA court's determination concerning the third-degree murder jury instruction is supported by the record and is free of legal error. *See Lawson*, 90 A.3d at 4.

First, we note that this Court previously held that there was sufficient evidence for the jury to find Appellant guilty of first-degree murder. *See Churchill I*, 2018 WL 617073 at *1. Specifically, the *Churchill I* Court noted that both victims died by ligature strangulation, and that DNA testing conclusively established that Appellant "was the source of the DNA on the

paper towel with dark brown stain collected from the floor of the back seat of the vehicle in which Ms. Ellis' body was found" and "was the major contributor of the DNA collected from the heel of Ms. Hanible's left sneaker, which was missing the shoelace that was used to strangle her." *Id.*[6]

Further, the Commonwealth's evidence established Appellant's specific intent to kill. As noted previously, Appellant killed both victims using ligature strangulation. *See* N.T., 4/20/16, at 64-73, 80, 84-85; N.T., 4/26/16, at 5-10, 14-17. Manual strangulation is sufficient to establish the specific intent necessary to prove first-degree murder. *See Montalvo*, 956 A.2d at 932; *Mitchell I*, 902 A.2d at 445; *Hawkins*, 701 A.2d at 500; *cf. Dunphy*, 20 A.3d at 1219 (explaining that third-degree murder is an unlawful killing with malice, but without the specific intent to kill).[7] Therefore, because there was

---

[6] Further, the jury was free to disbelieve Appellant's theory that his DNA was coincidentally at the crime scene. At trial, the Commonwealth's forensic expert and the technical leader of the DNA laboratory, Byrne Strother, testified that her team compared the scenario that the DNA came from one of the victims and Appellant to the scenario that the DNA came from one of the victims and an unrelated person. *See* N.T., 4/27/16, at 73-76. Ms. Strother concluded with a reasonable degree of scientific certainty that the likelihood of randomly selecting an individual unrelated to Appellant, who could be included as a contributor of the major component of the DNA mixture detected in the samples from the crime scenes, was one in hundreds of quadrillions in the African-American population, one in quintillions in the Caucasian population, and one in hundreds of quadrillions in the Hispanic population. *See* N.T., 4/28/16, at 38-39.

[7] Moreover, on this record, there is sufficient evidence from which the jury could conclude that Appellant intentionally strangled Ellis after she scratched him. *See* N.T., 4/26/16, at 116-24 (reflecting the witness's testimony that Appellant recounted the details of how he killed the victims); *see also* N.T., *(Footnote Continued Next Page)*

sufficient evidence to establish that Appellant had the specific intent to kill, *see Montalvo*, 956 A.2d at 932, there would have been no basis for the trial court to instruct the jury on the lesser offense of third-degree murder. *See Browdie*, 671 A.2d at 673-74; *see also Houck*, 102 A.3d at 451 (stating that "[a] jury charge on a lesser-included offense is permissible so long as it does not offend the evidence presented" and the trial court should instruct the jury on a lesser-included offense "[i]f a rational jury, given the record evidence, can find the defendant guilty of the lesser-included offense" (citations omitted)).

For these reasons, we conclude that there is no arguable merit to Appellant's claim regarding trial counsel's failure to request a third-degree murder instruction. Accordingly, he is not entitled to relief.[8] *See Sandusky*, 203 A.3d at 1043-44; *Mitchell II*, 105 A.3d at 1265; *see also Treiber*, 121 A.3d at 44 (explaining that counsel cannot be deemed ineffective for failing to raise a meritless claim).

---

4/20/16, at 84-85 (reflecting the expert witness's testimony that there were fingernail-type abrasions on Ellis' neck).

[8] In any event, we also agree with the PCRA court that Appellant was not prejudiced by trial counsel's failure to request the third-degree murder jury instruction. Pennsylvania law mandates that an individual who is convicted of two counts of third-degree murder be sentenced to life imprisonment without the possibility of parole pursuant to 42 Pa.C.S. § 9715(a). Therefore, to the extent Appellant claims that he was prejudiced because he missed the "opportunity to have a sentence imposed which would require eligibility for parole at some point," he is not entitled to relief.

- 12 -

**Trial Court's Hypothetical Question and Commonwealth's Closing Argument**

Appellant's next two issues concern the trial court's hypothetical question to a defense witness. First, Appellant argues that trial counsel was ineffective for failing to object to the trial court's hypothetical question about DNA testing of a pacifier found with the remains of a badly decomposed infant body that had been languishing in a shallow grave for twenty-five years while the child's grieving parents desperately sought answers. *Id.* at 35-36 (citing N.T., 4/29/16, at 33-34). Appellant argues that there is arguable merit to his claim because the hypothetical question indicated that the trial court disbelieved the sole defense witness's testimony and the question "was all but certain to evoke a passionate response from the jurors." *Id.* at 38. Appellant contends that trial counsel had no reasonable basis for her inaction because an objection could have led to the question being withdrawn or refashioned, but that even an overruled objection would not have placed Appellant in a worse position. *Id.* at 39. Further, Appellant avers that an objection would have strengthened the testimony of the sole defense witness, so there was a reasonable probability of a different outcome had trial counsel objected. *Id.* at 40.

Appellant also argues that trial counsel was ineffective for failing to object when the Commonwealth's referred to the trial court's hypothetical during closing arguments. *Id.* at 41 (citing N.T., 4/29/16, at 121-22). Appellant argues that there is arguable merit to his claim because the

Commonwealth's argument prejudiced the jury against Appellant.  *Id.* at 44.

Appellant contends that trial counsel had no reasonable basis for her inaction

because the trial court could have issued a cautionary instruction.  *Id.* at 44-

45.  Appellant concludes that there was a reasonable probability of a different

outcome because an objection could have resulted in the testimony of the sole

defense witness being better received "by at least one juror."  *Id.* at 46.

"A trial court has broad discretion to determine whether evidence is

admissible[.]"  ***Commonwealth v. Huggins***, 68 A.3d 962, 966 (Pa. Super.

2013).  "While a trial judge should normally leave questioning of witnesses to

counsel, justice may require that a trial judge ask questions when absurd,

ambiguous, or frivolous testimony is given or testimony is in need of further

elucidation."  ***Commonwealth v. Carson***, 913 A.2d 220, 250 (Pa. 2006)

(citation omitted).  However, "[a] trial judge must be ever cautious that his

[or her] questioning of witnesses not show bias or a belief in the credibility of

particular witnesses."  ***Commonwealth v. Hogentogler***, 53 A.3d 866, 880

(Pa. Super. 2012) (citation omitted)).

"The use of hypothetical questions [when examining an expert witness]

is proper when there is evidence of record supporting the hypothetical."[9]

_____

[9] Recently, our Supreme Court decided ***Commonwealth v. Drummond***, ---
A.3d ---, 28 EAP 2021, 2022 WL 17171610 (Pa. filed Nov. 23, 2022), a case
of first impression in which the Court cautioned trial courts against innovating
hypotheticals, examples, or illustrations to instruct juries to avoid confusion
and potential constitutional infractions.  ***Drummond***, 2022 WL 17171610 at
*8.  Although ***Drummond*** involved a trial court's use of hypotheticals on
*(Footnote Continued Next Page)*

*Commonwealth v. Galvin*, 985 A.2d 783, 801 (Pa. 2009) (citation omitted);

*see also* Pa.R.E. 703 (stating that "[a]n expert may base an opinion on facts

or data in the case that the expert has been made aware of or personally

observed"). "An expert may give an opinion in response to a hypothetical,

provided the set of facts assumed in the hypothetical is eventually supported

by competent evidence and reasonable inferences derived therefrom."

*Commonwealth v. Clemat*, 218 A.3d 944, 957-58 (Pa. Super. 2019)

(citation omitted and formatting altered); *see also* Pa.R.E. 403 & Comment

(stating that a "court may exclude relevant evidence if its probative value is

outweighed by a danger of . . . unfair prejudice" and defining "unfair prejudice"

as "a tendency to suggest decision on an improper basis or to divert the jury's

attention away from its duty of weighing the evidence impartially").

Further, as the finder of fact, the jury "while passing upon the credibility

of witnesses and the weight of the evidence produced, is free to believe all,

part or none of the evidence." *Commonwealth v. Bright*, 234 A.3d 744,

749 (Pa. Super. 2020) (citation omitted). Additionally, the Commonwealth

"may sustain its burden of proving every element of the crime beyond a

---

reasonable doubt in its criminal case jury instructions, and the instant case involved a trial court's hypothetical question to a defense expert, the concerns about judicial hypotheticals expressed in *Drummond* apply equally here. *Id.* However, instantly, for the reasons stated herein, we conclude that Appellant has failed to establish that he was prejudiced by trial counsel's failure to object to the subject hypothetical although the imagery of a dead, decomposed infant with desperately grieving parents is troubling and emotive.

reasonable doubt by means of wholly circumstantial evidence." *Id.* (citation omitted).

"Generally, a prosecutor's arguments to the jury do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds [a] fixed bias and hostility towards the [defendant] which would prevent them from properly weighing the evidence and rendering a true verdict." *Commonwealth v. Campbell*, 360 A.3d 272, 280 (Pa. Super. 2021) (citation and quotation marks omitted). "A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor." *Id.* (citation omitted).

Further, this Court has explained that "[o]ur review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial." *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (citation omitted). A prosecutor's comments "must be examined within the context of defense counsel's conduct[,]" and "the prosecutor may fairly respond to points made" by the defense. *Id.* at 1020 (citation omitted). "Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair." *Id.* (citation omitted); *see also Commonwealth v. Crumbley*, 270 A.3d 1171, 1181-84 (Pa. Super. 2022) (concluding that trial counsel was not ineffective for failing to object to the prosecutor describing the defendant as an "angel of

death" during closing arguments because the metaphor was related to the witness's account of the killer wearing a hood and the witness's fear of him), *appeal denied*, --- A.3d ---, 110 WAL 2022, 2022 WL 4091175 (Pa. filed Sept. 7, 2022).

In addition, "[e]very unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial." **Commonwealth v. Goosby**, 301 A.2d 673, 674 (Pa. 1973) (citations omitted). Further, our Supreme Court has explained that "[t]he jury is presumed to have followed the court's instructions." **Commonwealth v. Chmiel**, 30 A.3d 1111, 1147 (Pa. 2011) (citation omitted).

Here, the trial court questioned the defense witness as follows:

Say somebody hires you and 25 years later, the baby went missing. They find a shallow grave. Everything is too decomposed but they find a pacifier. You test that pacifier. These parents want to know is that my child and you get the numbers up there, what would you tell those parents, that is excluded, that is not your child?

N.T., 4/29/16, at 33-34.

During closing arguments, the Commonwealth stated:

Now, the Judge—when [ADA Notaristefano] was questioning [defense witness]—she brought up a baby in a shallow grave with a pacifier and I thought it was a great example and it echoes on this case, as well. When you think about those parents and you think about wanting to know where their baby is, it is every mother's nightmare to lose their child. You wonder after years, and years, and years where the child is, what happened to them and all that is left 25 years later are bones and a pacifier.

You take the pacifier and you do DNA testing on it and maybe there are some hairs left in a brush or maybe the mother saved

hairs from the first haircut, or tooth, or something of their baby and we can do a DNA reference and we see it is her baby and then we see that mixed in with that is this stranger, this person that no one knows.

Now we have something to go on, a lead, something that takes us somewhere that we didn't originally have. We now can corroborate it and that is what was done in this case.

*Id.* at 121-22.

The PCRA court addressed Appellant's claims as follows:

Initially, this claim fails because any objection by counsel to the court's use of a hypothetical would have been fruitless since it would have been overruled. The court presented a hypothetical to the defense DNA expert in order to clarify her opinion for the jury since it was confusing. The expert was testifying regarding highly technical, scientific DNA evidence that was extremely difficult to understand and the expert was not speaking in terms that a lay person could understand. The role of the judge at trial is to ensure the jury clearly understands the testimony. The court posed the hypothetical to [defense witness] in order to place her highly technical testimony in plain language with which the jury could relate and understand.

As to the ADA's use of the hypothetical during closing arguments, the reference to the hypothetical was in a completely different context. The hypothetical was used to explain how this defendant was arrested decades after the murder based on evidence that had been collected at the time of the murder. The ADA's use of the hypothetical was mere oratorical flair accentuating the advancements in DNA analysis which enabled law enforcement to solve cold cases. *See Commonwealth v. Tedford*, 960 A.2d 1, 33 (Pa. 2008) ("The prosecution's statements are unobjectionable if they . . . represent mere oratorical flair.").

PCRA Ct. Op. at 8.

Following our review of the record, we conclude that the PCRA court's determination is supported by the record and is free of legal error. *See Lawson*, 90 A.3d at 4. Instantly, Appellant has failed to establish that trial

court's hypothetical question to the defense expert witness demonstrated bias or that the court found the witness's testimony not credible. **See Hogentogler**, 53 A.3d at 880.

First, we emphasize that this trial involved the gruesome murder of two women who were violently assaulted and strangled to death and the investigations became cold cases for over two decades. **See** PCRA Ct. Op. at 2-3. The jury trial included many gory details, including photographic evidence and testimony. We recognize that the trial court's hypothetical question was emotive and troubling because of the imagery of a badly decomposed infant child and grieving parents. However, given the context of the trial, we conclude that the trial court's hypothetical question was not improper, as it involved a similar scenario where a case remained unsolved for decades until technological advancement of DNA testing enabled investigators to develop DNA profiles. **See Galvin**, 985 A.2d at 801.

Further, the PCRA court was also the trial court judge who posed the hypothetical question, and the PCRA court judge noted in her Rule 1925(a) opinion that if trial counsel had objected to that hypothetical question, she would have overruled such an objection. **See** PCRA Ct. Op. at 8.

Additionally, we find no error in the PCRA court's determination that the Appellant failed to establish prejudice because the Commonwealth sustained its burden of proving Appellant's guilt beyond a reasonable doubt based on overwhelming circumstantial evidence, including the presence of Appellant's DNA in blood evidence at both crime scenes in addition to witness testimony.

*See Bright*, 234 A.3d at 749.  Because Appellant cannot establish the prejudice prong of the ineffectiveness standard, his claim must fail.  *See Sandusky*, 203 A.3d at 1043-44 (reiterating that "a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness" (citation omitted and formatting altered)).  Appellant is not entitled to relief concerning the trial court's hypothetical question to Appellant's defense expert.  *See Mitchell II*, 105 A.3d at 1265.

Further, we conclude that the PCRA court's determination regarding trial counsel's failure to object to the Commonwealth's reference to the trial court's hypothetical is supported by the record and is free of legal error.  *See Lawson*, 90 A.3d at 4.  The Commonwealth's reference to the hypothetical, although emotive, could be understood by the jurors to explain the context of how the case was reopened as a cold case using DNA evidence.  *See* N.T., 4/29/16, at 121-22.  Instantly, we conclude that this is within the latitude of a prosecutor's logical force and vigor in presenting their case.  *See Campbell*, 360 A.3d at 280.

As discussed above, Appellant's trial involved two gruesome and violent homicides of women who were assaulted and strangled to death.  *See* PCRA Ct. Op. at 2-3.  The investigations were cold cases for almost two decades before the technological advancement of DNA testing.  *See id.* Given the construct of the trial, the subject hypothetical question, while troubling and emotive, did not result in an unfair trial based on the overwhelming circumstantial evidence of Appellant's guilt, including witness testimony and

- 20 -

the presence of his DNA in blood evidence at both crime scenes. Expert testimony estimated that the likelihood of an unrelated individual to Appellant, who could be included as a contributor of the major component of the DNA mixture detected in the sample from the paper towel, was one in hundreds of quadrillions. *See* N.T., 4/28/16, at 38-39; *Judy*, 978 A.2d at 1019-20; *see also Tedford*, 960 A.2d at 33.

Further, the trial court specifically cautioned the jury not to base their decision on sympathy. *See* N.T., 4/29/16, at 149. The trial court further instructed the jury that its decision must be based solely on the facts and evidence presented and not to base its determination of the facts on empathy for or prejudice against the victims or Appellant. *See id.* at 152-53. Further, the trial court instructed the jury on how to weigh the testimony of each witness, and explained that the jury may believe all, part, or none of a witness' testimony, and defined circumstantial evidence for the jury. *See id.* at 158-67. Moreover, at the start of the trial, the trial court informed the jury that argument from counsel does not constitute evidence. *See* N.T., 4/20/16, at 11, 16. Accordingly, upon examining the trial court's instructions as a whole, we conclude that the trial court's jury instructions were sufficient to explain the jury's duty as the finder of fact and cure any prejudice that may have resulted from the Commonwealth's reference to the trial court's hypothetical during closing arguments. *See Chmiel*, 30 A.3d at 1147 (explaining that the jury is presumed to follow the trial court's instructions); *see also Bright*, 234 A.3d at 749 (explaining that the finder of fact may believe all, part, or none

of a witness's testimony). In any event, if there was arguable merit to Appellant's claim, based on our foregoing reasons, he has not demonstrated that he was prejudiced by the use of the subject hypothetical and no relief is due. ***See Sandusky***, 203 A.3d at 1043-44; ***see also Mitchell II***, 105 A.3d at 1265.

For these reasons, we discern no error or abuse of discretion by the PCRA court in denying Appellant's petition. Therefore, we affirm the PCRA court's order. ***See Lawson***, 90 A.3d at 4.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *1/12/2023*