J-S47011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAFFEYELL MOODY | : | |
| | : | |
| Appellant | : | No. 2059 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 24, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009396-2010

BEFORE: PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED MARCH 6, 2026**

Raffeyell Moody appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on his conviction of aggravated assault after his direct appeal rights were reinstated *nunc pro tunc*. Moody raises a challenge to the weight of the evidence and the discretionary aspects of his sentence. We affirm.

We previously stated the facts surrounding Moody's convictions and appeal. *See Commonwealth v. Moody* (*Moody I*), No. 3232 EDA 2012, 2016 WL 5844375, at *1 (Pa. Super. filed Oct. 5, 2016) (unpublished memorandum); *Commonwealth v. Moody* (*Moody II*), Nos. 1613-14 EDA 2020, 2021 WL 5176399, at *1 (Pa. Super. filed Nov. 8, 2021) (unpublished memorandum).

> [Moody's] convictions arose from events that occurred on March 31, 2010. The night before, [Moody] had a series of verbal and physical altercations with two brothers[, Shawn McKinnon and

Brian Buelah,] in his ex-girlfriend's house, which continued through to the next morning. [Moody] later returned with a handgun, shooting both men in the abdomen, seriously injuring them, before one of the men disarmed [Moody] and forced [Moody] to flee the house. Both victims required emergency surgery. One sustained permanent injuries that may cause loss of organ function throughout life, requiring additional surgery.

*Moody I*, 2016 WL 5844375, at *1.

On June 15, 2012, at docket number CP-51-CR-0009394-2010, a jury convicted Moody of aggravated assault, carrying a firearm without a license, and possessing an instrument of crime.[1] At docket number CP-51-CR-0009396-2010, he was convicted of one count of aggravated assault (18 Pa.C.S.A. § 2702(a)(1)).[2] The jury was unable to reach a unanimous verdict with respect to two counts of attempted murder. The Commonwealth *nolle prossed* the attempted murder charges on June 26, 2012.

On October 24, 2012, Moody was sentenced to an aggregate term of 23.5 to 47 years' imprisonment. Specifically, the court imposed consecutive sentences of 10 to 20 years' imprisonment for each aggravated assault conviction, 3.5 to 7 years' imprisonment for the firearms not to be carried without a license conviction, and the probationary tail for the PIC conviction.

[Moody] filed a timely post-sentence motion at docket 9396-20[10] on November 6, 2012, which the court denied on January 24, 2013, but he did not pursue further direct review at this docket. Conversely, [Moody] timely filed a direct appeal from his

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 6106(a)(1), and 907(a), respectively.

[2] Docket number 9394-2010 related to victim Shawn McKinnon, while docket number 9396-2010 related to victim Brian Buelah.

judgment of sentence at docket 9394-2010. On October 5, 2016, this Court affirmed the judgment of sentence at docket 9394-2010. *See* [*Moody I*.]

*Moody II*, 2021 WL 5176399, at *1 (footnoted omitted).

On January 31, 2024, the lower court granted Moody's PCRA petition and granted Moody leave to file a post-sentence motion *nunc pro tunc* for docket number 9396-2010. On February 12, 2024, Moody filed a post-sentence motion raising issues with the weight of the evidence and the discretionary aspects of his sentence. The post-sentence motion was denied by operation of law on June 12, 2024. Moody timely appealed. The trial court did not order him to file a Rule 1925(b) statement, but the court filed a Rule 1925(a) opinion on December 20, 2024. *See* Pa.R.A.P. 1925(a), (b).

In the brief one-page opinion, the trial court stated:

After reviewing the argument brought by counsel regarding sentencing and reviewing the sentencing transcript, the sentencing court appears to have considered improper factors while imposing sentence.

This Court would grant the Post Sentence Motion and ask that this matter be remanded for resentencing.

Trial Court Opinion, 12/20/24, at 1.[3]

Appellant raises two issues for our review.

1. Was the verdict against the weight of the evidence to such a degree as to shock one's conscience and a new trial should be granted?

_____

[3] Judge Furlong was neither the trial judge nor the sentencing judge. The Honorable James Murray Lynn presided over the trial and sentencing.

2. Did the sentencing court abuse its discretion where it considered improper factors at sentencing where the lower court agrees that this matter should be remanded for resentencing?

Appellant's Brief, at 4 (unnecessary capitalization omitted; renumbered).

In his first issue, Moody challenges the weight of the evidence for his aggravated assault conviction.

A weight of the evidence claim is within the trial court's discretion.

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Bernarsky*, 348 A.3d 304, 323 (Pa. Super. 2025) (citation omitted). "The finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Bright*, 234 A.3d 744, 749 (Pa. Super. 2020) (citation and brackets omitted).

Moody argues that his conviction was against the weight of the evidence because the DNA evidence did not support that his DNA was on the recovered firearm and the eyewitnesses testified that they did not directly see who shot the victims. *See* Appellant's Brief, at 28-31.

This Court previously summarized the relevant trial testimony.

The Commonwealth presented the testimony of Courtney Henry. . . . Ms. Henry [testified] that she and [victim, Brian] Buelah ran downstairs after hearing a lot of commotion. At that time, she testified[,] she saw [ ] Appellant inside her home engaged in an argument and possible fight with Shawn McKinnon. After Brian Buelah broke up the fight, Ms. Henry [testified] that [ ] Appellant, who appeared to be highly upset, made a threat to Mr. McKinnon's life before leaving her home. A short time later, Ms. Henry testified that [ ] Appellant returned to her home. Upon seeing [ ] Appellant reach for the back of his pants, Ms. Henry, fearing that he was armed, ran for cover in her basement door corridor. Less than a minute later, Ms. Henry's fear was confirmed when she heard [four or five] gunshots followed by screaming from either Mr. Buelah or Mr. McKinnon.

Brian Buelah testified that, on the morning of [March] 31, 2010, he was upstairs with Ms. Henry at her home. After hearing rumbling, Mr. Buelah testified that he went downstairs whereupon he saw [ ] Appellant standing over his brother, Shawn McKinnon. After seeing them wrestling or fighting, Mr. Buelah stated that he pulled [ ] Appellant off of his brother after which [ ] Appellant left the home. Mr. Buelah testified that [ ] Appellant returned about a minute later with a gun. Mr. Buelah further testified that [ ] Appellant approached him and shot him in the stomach. According to Mr. Buelah, [ ] Appellant then raised his gun and shot his brother, Shawn McKinnon. Mr. Buelah stated that he then was able to wrestle the gun away from [ ] Appellant. He then testified that he saw his brother [lying] on the floor. Mr. Buelah stated that he and his brother got into his Jeep and drove to the hospital. Mr. Buelah testified that he still had the gun taken from [ ] Appellant[,] which he put into his Jeep.

. . . .

Detective Dom Suchinsky testified that he was assigned to investigate the shooting of March 31, 2012. On that date[,] he prepared and executed a search warrant for the Isuzu Rodeo Jeep [driven by Mr. Buelah, with Mr. McKinnon, to the hospital] and recovered a .38 caliber Taurus revolver underneath the rear passenger seat. Finally, Detective Suchinsky testified that he presented both Brian Buelah and Shawn McKinnon with photo arrays from which both males made a positive identification of [ ] Appellant as the person who shot them.

The Commonwealth also presented testimony from Doctor Jay James Strain, an expert in the field of trauma surgery and critical care surgery. On March 31, 2010, Dr. Strain was working as the chief surgical attendant at Albert Einstein Medical Center where he recalled Brian Buelah and Shawn McKinnon coming into the emergency room with gunshot wounds. Dr. Strain stated that Shawn McKinnon had a gunshot wound that went from his lower left abdomen, about 2 inches above belt level, and exited through his buttocks. Because the nature of his condition caused concern for injury to his internal organs, exploratory surgery was performed. Dr. Strain testified that the surgery revealed that the bullet went approximately half an inch between two major vascular structures. Dr. Strain explained that if the bullet had gone a half an inch to the right, it would [ ] have led to either death or severe disability. Dr. Strain further testified that an examination of Brian Buelah revealed an entry point in the same location of the abdomen. Unfortunately[,] the bullet struck and completely transected a major vessel which provides a huge amount of blood supply to the central abdomen and lower pelvis. Dr. Strain stated that emergency surgery was needed to be performed on Mr. Buelah to repair his artery, bowel, and bladder. Dr. Strain explained that he performed "damage control surgery" on Mr. Buelah after which he was left with only 50% of the blood vessels which are responsible for providing most of the blood supply to the central abdomen. Finally, Dr. Strain testified that Mr. Buelah had a lifetime risk of having pain and difficulty walking, risk of impotence and loss of [penile] function. Also, Mr. Buelah had a lifetime, one in four, chance of requiring further surgery to his bowel.

*Moody I*, 2016 WL 5844375, at *4-5 (alterations in original) (citation omitted).

Further, as the Commonwealth points out, Moody's claim that his DNA was not on the recovered firearm is belied by the record because, although the forensic scientist testified that it was "inconclusive" as to whether Moody was a contributor of DNA found on the trigger, Moody was a contributor of DNA recovered from the front grip of the firearm. *See* N.T. 6/7/12, at 126,

129-30. As Moody's weight of the evidence claim is belied by the record and challenges the credibility of the witnesses, he is not entitled to relief.

In his second issue, Moody challenges the discretionary aspects of his sentence. "[A] challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." **Commonwealth v. Alameda**, 339 A.3d 504, 512 (Pa. Super. 2025), *appeal denied*, No. 354 EAL 2025, 2026 WL 203011 (Pa. Jan. 27, 2026) (citation omitted).

> To invoke our jurisdiction Moody must satisfy a four-part test:
>
> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42[] Pa.C.S.A. § 9781(b).

**Id.** (brackets and citation omitted).

Moody filed a timely *nunc pro tunc* post-sentence motion and appeal. He included a Rule 2119(f) statement in his brief. He has raised a substantial question by arguing that the sentencing court considered impermissible factors in sentencing him. **See Commonwealth v. Stewart**, 867 A.2d 589, 592 (Pa. Super. 2005). Therefore, we will consider the merits of Moody's argument.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather,

the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Reid*, 323 A.3d 26, 30 (Pa. Super. 2024) (citation omitted).

Moody argues that the sentencing court relied on an impermissible factor during sentencing. Specifically, he argues that the sentencing court relied on his *nolle prossed* attempted murder charges. *See* Appellant's Brief, at 24-25. Moody argues that given the consideration of the impermissible sentencing factor, the imposition of an aggravated range sentence, and the imposition of consecutive sentences, his sentence was unreasonable. *See id.* at 26-27. The Commonwealth argues that the sentencing court did not consider the non-conviction for the attempted murder charges but rather considered the nature and circumstances of the offenses for which Moody was convicted. *See* Appellee's Brief, at 9-11.

"In imposing an aggravated-range sentence, the lower court is permitted to consider any legal factor." *Commonwealth v. Salter*, 290 A.3d 741, 749 (Pa. Super. 2023) (citation omitted).

> When reviewing an aggravated range sentence, the essential question is whether the sentence imposed is reasonable, considering the nature and circumstances of the offense, the history and characteristics of the defendant, the opportunity of the sentencing court to observe the defendant, including any presentence investigation, the findings upon which the sentence was based, and the sentencing guidelines.

*Commonwealth v. Agugliaro*, 342 A.3d 105, 116 (Pa. Super. 2025) (citations and internal quotation marks omitted).

Moody relies on *Commonwealth v. Berry*, 323 A.3d 641 (Pa. 2024). In *Berry*, our Supreme Court reiterated that it is impermissible for a sentencing court to consider prior arrests that did not result in convictions. *See id.* at 654-55. This Court has distinguished *Berry* from circumstances where the sentencing court permissibly considers the underlying facts that support the conviction. In *Commonwealth v. White*, Nos. 5-6 WDA 2025, 2025 WL 2945723 (Pa. Super. filed Oct. 17, 2025) (unpublished memorandum)[4], the appellant was previously charged with assault by prisoner and terroristic threats. Those charges were reduced to harassment and disorderly conduct when he pleaded guilty. *See id.* at *3.

The Court distinguished that case from *Berry*:

Here, White admitted and was adjudicated delinquent of lesser charges. Specifically, White was originally charged with assault by prisoner and terroristic threats, but those charges were reduced to harassment and disorderly conduct. The factual basis underpinning the charges was the same and White admitted to those facts when he tendered his admission to the lesser charges. Therefore, *Berry* is distinguishable.

The court here did not rely on mere arrests. It relied on White's admission and adjudication of delinquency. The court acknowledged the original charges were reduced and recited the facts of his admission. We find the trial court did not run afoul of *Berry* as it did not consider "unproven conduct" but considered

_____

4 Unpublished memoranda filed after May 1, 2019, may be cited for their persuasive value. *See* Pa.R.A.P. 126(b).

the charges and factual basis that White admitted he committed. [**Berry**, 323 A.3d at 654 (footnoted omitted).]

**Id.** at **3-4.

The instant case is similarly distinguishable from **Berry**. The sentencing court did not impermissibly consider the fact that Moody was charged with attempted murder for which he was not convicted but rather considered the underlying facts that supported his aggravated assault conviction. The underlying facts to support the aggravated assault conviction, supported by evidence properly admitted at trial, were that Moody shot Buelah in his stomach which could have led to his death. **See** N.T., 10/24/2012, at 20-23. The certified record clearly includes the evidence at trial. Further, the sentencing court went on to explain that it also considered the presentence investigation report and its reasoning for imposing an aggravated range sentence. **See id.** at 6, 19-29. Accordingly, we discern no abuse of discretion and must respectfully disagree with the learned trial court.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/6/2026

- 10 -