J-S23018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS BELL | : | |
| | : | |
| Appellant | : | No. 18 EDA 2025 |

Appeal from the Judgment of Sentence Entered September 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007966-2022

BEFORE: STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.: **FILED JULY 14, 2025**

Marcus Bell (Appellant) appeals from the judgment of sentence imposed following his jury convictions of first-degree murder, firearms not to be carried without a license, carrying a firearm on a public street in Philadelphia, possession of an instrument of crime, and recklessly endangering another person.[1] On appeal, Appellant challenges the weight of the evidence supporting his convictions. After careful review, we affirm.

The trial court summarized the relevant factual history underlying this appeal:

> On July 30, 2022, [Appellant] traveled from his home in Williamsport, Pennsylvania[,] to South Philadelphia. [Appellant] arrived in South Philadelphia at approximately 2:30 p.m., and eventually met his friend, Reese Summerville [(Mr. Summerville)], in the area of 13th and Fitzwater Streets around

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1), 6108, 907, 2705.

4:50 p.m. Mr. Summerville drove a Chevy Camaro registered to his wife, Erica George [(Ms. George)], to meet [Appellant], and believed the purpose of the meeting was to lend [Appellant] money that [Appellant] had asked for earlier that day.

When the pair met, Mr. Summerville gave [Appellant] the money that he had requested, and [Appellant] asked Mr. Summerville to borrow the Camaro. When Mr. Summerville told [Appellant] that he could not loan [Appellant] the car, [Appellant] asked Mr. Summerville for a ride to the area of 21st and Tasker Streets. Mr. Summerville agreed and drove [Appellant] to the area, passing a convenience store at the intersection of 21st and Dickinson Streets in the process. Shortly after passing the convenience store, Mr. Summerville pulled onto South Lambert Street, that is, about one block over from 21st and Dickinson, where [Appellant] got out of the Camaro at approximately 5:21 p.m.

After [Appellant] got out of the Camaro, he walked north on South Lambert Street towards the convenience store at the intersection of 21st and Dickinson Streets, where Damon Smith [(Mr. Smith)] and several other people were congregated in front of the store. [Appellant] ran towards the group, shot Mr. Smith approximately 16 times, and then ran back towards South Lambert Street[,] where he got back into the Camaro at approximately 5:23 p.m. Once [Appellant] was inside the Camaro, he told Mr. Summerville that he had just shot someone who had previously ambushed him, and the pair drove away.

Immediately following the shooting, Philadelphia police officers arrived on scene at the convenience store to find Mr. Smith laying in the doorway. Officers subsequently transported Mr. Smith to Penn Presbyterian Medical Center, where he was pronounced dead at approximately 6 p.m. Philadelphia Deputy Chief Medical Examiner[,] Dr. Victoria Sorokin[,] determined that Mr. Smith's cause of death was multiple gunshot wounds, and his manner of death was homicide. [Appellant] was not licensed to carry a firearm on the date of the shooting.

Trial Court Opinion, 2/5/25, at 2-4 (citations to record omitted).

On September 26, 2024, a jury convicted Appellant of the above-described offenses. On the same date, the trial court sentenced Appellant to an aggregate term of life in prison without the possibility of parole. Appellant filed a timely post-sentence motion, challenging the weight and sufficiency of the evidence supporting his convictions. The trial court denied Appellant's post-sentence motion on October 29, 2024.

Thereafter, Appellant's trial counsel filed a motion to withdraw from representation. The trial court granted counsel's motion and appointed new counsel to represent Appellant on direct appeal. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue for review:

> Were Appellant's convictions against the weight of the evidence and should a new trial be ordered because the Commonwealth did not prove beyond a reasonable doubt that Appellant engaged in all of the conduct for which Appellant was convicted because, *inter alia*, lots of people from the neighborhood where Appellant grew up have similar tattoos to Appellant[;] there were no weapons recovered from Appellant's car or residence[;] there was no definitive evidence of matching shorts or other clothing from Appellant's residence when compared with video evidence[;] there was no cellular analysis that pinpointed [A]ppellant [as] being at the murder scene[;] there was no DNA or gunshot residue testing done on recovered clothing and other evidence[;] there was another person in [] S[u]mmerville's car called "Singer" proximate to the shooting[;] there was a holster recovered from [] S[u]mmerville's residence with no gun recovered[;] and there was no facial identification of Appellant at the scene or on any video?

Appellant's Brief at 4.

Appellant argues the verdict was against the weight of the evidence, because "[t]here was no video facial identification[;] other people were present and had motive to lie[;] and other evidence was circumstantial at best." *Id.* at 9. Appellant contends another individual known as "Singer" was also present in Mr. Summerville's car. *Id.* at 12. Appellant also emphasizes that police recovered an empty gun holster from Mr. Summerville's home, while "no gun or gun accessories [were] recovered from Appellant's residence or vehicle." *Id.* According to Appellant, evidence concerning similarities between the shooter's tattoos and his own is "inconclusive," as "lots of people from the neighborhood where Appellant grew up … had similar tattoos…." *Id.* at 13. Appellant asserts the cell site location data did not affirmatively place him at the scene of the shooting, and video evidence from the scene did not provide a view of the shooter's face. *Id.* at 12-13. Further, Appellant challenges the trial court's "wholesale reliance" on "Mr. Summerville's self-serving and tainted evidence…." *Id.* at 13.

We adhere to the following standard of review:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Bright*, 234 A.3d 744, 749 (Pa. Super. 2020) (citation omitted); *see also Commonwealth v. Arias*, 286 A.3d 341, 352 (Pa. Super. 2022) ("[T]he role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." (citation omitted)).

"In order for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Smith*, 146 A.3d 257, 265 (Pa. Super. 2016) (citation omitted). "[T]his Court cannot substitute its judgment for that of the jury on issues of credibility, or that of the trial judge respecting weight." *Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011). Further, "the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Bright*, 234 A.3d at 749 (citation and internal quotation marks omitted).

Instantly, the trial court considered Appellant's weight claim, and concluded that it lacks merit:

> All of [Appellant's] weight arguments pertain to alleged infirmities in the evidence regarding [Appellant's] identity as the shooter…. Because the evidence of [Appellant's] culpability was overwhelming, his weight claim is completely without merit.
>
> In particular, the Commonwealth presented the credible testimony of … [Mr.] Summerville, who drove [Appellant] to and from the murder scene. Mr. Summerville testified that on July 30,

2022, … the day of the murder, he drove his wife's Chevy Camaro to meet [Appellant] around the area of 13th and Fitzwater Streets in South Philadelphia. Mr. Summerville stated that he planned to meet [Appellant] because [Appellant] had asked to borrow money earlier that day, and that the pair chose to meet around 13th and Fitzwater Streets because they grew up around that area. Mr. Summerville testified that, to his understanding, [Appellant] traveled from his home in Williamsport in order to see his children, who lived in Philadelphia. According to Mr. Summerville, after giving [Appellant] the money he requested, [Appellant] asked to borrow the Camaro. Mr. Summerville refused, but agreed to drive [Appellant] to the area of 21st and Tasker Streets at [Appellant's] request, passing the convenience store at the corner of 21st and Dickinson Streets on the way. Mr. Summerville testified that shortly after passing the convenience store, he parked the Camaro on a "skinny" block off of Tasker Street, at which point [Appellant] exited the car and walked towards Dickinson Street. Mr. Summerville stated that, a short time later, [Appellant] returned to the Camaro, got back in the car, and told Mr. Summerville that he had shot someone who previously "ambushed" him. After [Appellant] got back in the car, Mr. Summerville noticed that [Appellant] had a gun on his person.

Trial Court Opinion, 2/5/25, at 5-6 (citations to record omitted).

The trial court emphasized that Mr. Summerville's testimony was corroborated by additional evidence:

Most importantly, the Commonwealth presented a surveillance video compilation which completely corroborated Mr. Summerville's account and showed the entirety of the murder. Surveillance video captured the Chevy Camaro registered to [Ms.] George traveling past the convenience store on 21st and Dickinson [Streets] at approximately 5:19 p.m., less than five minutes before the murder. Shortly after passing the store, the Camaro was captured again parked on South Lambert Street, that is, a "skinny" block located between Tasker and Dickinson Streets. The individual identified as the shooter could be seen exiting the passenger side of the Camaro, wearing a bright orange work vest, black knit hat, and distinctive green shorts. After leaving the car, video showed the shooter walking in the direction of Dickinson Street at approximately 5:21 p.m., running towards the convenience store on the corner of 21st and Dickinson Streets, and

shooting Mr. Smith multiple times as he stood with several others in the doorway of the convenience store at approximately 5:22 p.m. Notably, as the shooter extended his right arm to shoot Mr. Smith[,] the tattoo on the shooter's arm was clearly visible and appeared identical to the tattoo on [Appellant's] right arm. Following the shooting, video showed the shooter turn away from the store, run back towards South Lambert Street, and get into the Camaro at approximately 5:23 p.m.[,] before the Camaro drove away. All of this was completely consistent with Mr. Summerville's testimony.

In addition, Mr. Summerville testified to events following the shooting[,] which were corroborated by other evidence and thereby provided further proof of Mr. Summerville's credibility. In particular, Mr. Summerville testified that after he dropped [Appellant] off following the shooting, he realized that [Appellant] had left his wallet in the Camaro. At that time, Mr. Summerville called [Appellant], and the pair met again around 13th and Fitzwater Streets, at which point Mr. Summerville gave [Appellant] his wallet back. Mr. Summerville testified that [Appellant] drove his own car to meet Mr. Summerville following the shooting, and "Tall," a friend of Mr. Summerville and [Appellant], was also present at the time on Fitzwater Street, and got in [Appellant's] car after Mr. Summerville had given [Appellant] his wallet back.

This testimony was strongly corroborated by video surveillance in the area of 13th and Fitzwater Streets, which showed that about 20 minutes after the shooting, at approximately 5:45 p.m., the Camaro was parked on Fitzwater Street, and a Dodge Charger that was registered to [Appellant] parked behind it. [Appellant] and Mr. Summerville's friend Tall could also be seen getting into [Appellant's] vehicle at that time.

*Id.* at 6-8 (citations to record omitted).

Moreover, the court detailed the use of cell site location data as corroborating evidence:

Cell site analysis of [Appellant's] phone and a cell phone extraction from Mr. Summerville's phone also corroborated Mr. Summerville's testimony. Cell-site data obtained from a phone number associated with [Appellant] indicated that [Appellant's]

phone left Williamsport around 12 p.m. on the day of the murder and arrived in South Philadelphia around 2:30 p.m. At 2:49 p.m., [Appellant's] phone was in the area of the crime scene around 21st and Dickinson Streets[;] and two hours later, at 4:49 p.m., [Appellant's] phone was in the area of 13th and Fitzwater Streets, where Mr. Summerville testified that he met [Appellant] prior to the murder. At 5:14 p.m., less than 10 minutes before the murder, [Appellant's] phone was in the area of the crime scene, and at 5:24 p.m., about two minutes after the murder, [Appellant's] phone was just south of the crime scene, consistent with Mr. Summerville's testimony that he drove away from the area of 21st and Dickinson Streets following the shooting. Finally, between 5:34 p.m. and 5:46 p.m., about 20 minutes after the murder, [Appellant's] phone was once again in the area of 13th and Fitzwater Streets[, which was] consistent with Mr. Summerville's testimony about meeting [Appellant] to return his wallet.

In addition, the cell phone extraction done on Mr. Summerville's phone showed that multiple calls had been made between Mr. Summerville and [Appellant] throughout the day of the murder, including two calls between 5:30 p.m. and 5:40 p.m., right after the murder, consistent with Mr. Summerville's testimony that he had called [Appellant] after the murder to return [Appellant's] wallet. Mr. Summerville's phone extraction also revealed that, at approximately 8 p.m. on the day of the murder, [Appellant] texted Mr. Summerville a video of the surveillance footage from the convenience store that captured the shooting. [Appellant] also texted Mr. Summerville a picture from [Appellant's] Instagram, posted before the murder, of [Appellant], Mr. Summerville, and Tall at 13th and Fitzwater Streets, that is, the location where Mr. Summerville testified he and [Appellant] met several times [on] the day of the murder.

Finally, the Commonwealth presented evidence recovered from search warrants executed on [Appellant's] vehicle and Williamsport home on August 4, 2022, during which the police recovered four pairs of athletic shorts from [Appellant's] residence, each similar in style to the shorts that the shooter could be seen wearing on surveillance video. Additionally, from [Appellant's] Dodge Charger, the Williamsport Police Department recovered a black knit hat, another pair of multicolored athletic shorts, and a yellow construction vest, all also very similar to the clothing worn by the shooter. All of this evidence clearly

established that [Appellant] was the person who killed [Mr.] Smith.

Accordingly, the verdicts in this case were completely supported by the Commonwealth's compelling evidence, and in no way shocked the conscience of the [c]ourt. …

*Id.* at 8-9 (citations to record omitted).

Upon review, we discern no abuse of the trial court's discretion in denying Appellant's weight claim. The jury, as finder of fact, was "free to believe all, part or none of the evidence" and to assess the credibility of witnesses. *Commonwealth v. Gause*, 164 A.3d 532, 541 (Pa. Super. 2017) (*en banc*) (citation omitted). We will not disturb the trial court's discretion to uphold the jury's verdict, which is overwhelmingly supported by the record. Accordingly, Appellant's sole claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/14/2025

- 9 -