**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWIN CONDE | : | |
| | : | |
| Appellant | : | No. 2648 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 27, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001687-2021

BEFORE: LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.: **FILED JANUARY 16, 2026**

Edwin Conde appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his convictions of one count each of rape of a child,[1] involuntary deviate sexual intercourse (IDSI)—serious bodily injury,[2] aggravated indecent assault of a child,[3]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3121(c).

[2] *Id.* at § 3123(c).

[3] *Id.* at § 3125(b).

unlawful contact with a minor—sexual offenses,[4] and indecent assault—person less than 13 years of age.[5]  After review, we affirm.

The trial court summarized the relevant trial testimony in this case as follows:

> Between the time she was seven and eight years old, minor M.M. was vaginally, anally, and orally penetrated and assaulted by [Conde], her mother's then-paramour.  Less than a year after the last incident of abuse, M.M. disclosed the abuse and identified [Conde] as her abuser.
>
> * * *
>
> [At trial, M.M. testified that, w]hen she was seven years old, M.M. lived with her mother [(Mother),] two half-siblings[,] and grandmother in a home on Percy Street, in the [C]ity and County of [Philadelphia].  At the Percy Street residence, M.M. and her half-siblings slept in "the white-and-red-room," and her mom slept in the "green room."  Around this time, [Mother] started dating [Conde].  One night, [Conde] went into M.M.'s room and told her to come with him to the green room.  M.M. complied.  She asked [Conde] why she had been brought there, but he said nothing.  [Conde] then pulled M.M.'s pants down and inserted his penis into her butt.  M.M.'s mother was asleep at the time.  Afterwards, [Conde] told her to return to her room, where she began to cry.  M.M. wanted to tell [M]other what had occurred the next day, but [Conde] had warned her not to or "something is going to go bad."
>
> On another night, [Conde] again went to M.M.'s room, woke her up[,] and again instructed her to go with him to the green room.

_____

[4] ***Id.*** at § 6318(a)(1).  We note that subsection 6318(a)(1) was deleted by amendment on June 27, 2025, and made effective in 60 days on August 26, 2025.  ***See id.***  However, this offense was still in effect at the time of Conde's trial, conviction, and sentencing.

[5] ***Id.*** at § 3126(a)(7).

Once she was on the bed, [Conde] told her to remove her pants, but then to wait and be quiet because he heard M.M.'s mother moving in the bed. He then inserted his penis into M.M.'s vagina. She again wanted to tell [M]other about what had happened, but she was scared, in part because she believed [Conde] would hurt her.

When M.M. was eight, while her half-siblings played PlayStation, [Conde] called M.M. into another room. [Conde] then lifted M.M. off the ground, turned her upside down and inserted his tongue into her vagina. Other incidents of abuse involved [Conde] pulling down M.M.'s pants and putting his fingers inside her vagina, and [Conde] anally penetrat[ing] M.M. with his penis.

[L]ess than a year after the last incident of abuse [] occurred, M.M. disclosed [the abuse] to Delilah [Ramos, M.M.'s friend,] during a game wherein the two girls were supposed to tell each other their biggest secrets. Subsequently, the two girls disclosed the abuse to Delilah's sister, Daisha [Ramos], and then to Luz Calero, the mother of Delilah and Daisha.

The following day, [] Calero called the Department of Human Services (DHS). Subsequently, M.M. was taken to a doctor for an exam, during which M.M. experienced flashbacks of the abuse. M.M. was removed from [M]other's custody and placed with an aunt, where she remained [] for two years.

[Delilah testified that she] considers M.M. to be her best friend. When she was ten or eleven years old, Delilah was spending time with M.M. During a game about the girls sharing their biggest secret, M.M. "started talking more about sex and stuff." M.M. then told Delilah that "she had been getting touched" on her "vagina area" with [Conde]'s penis, tongue, and fingers. Although M.M. asked Delilah not to tell anyone else because she was afraid, the two girls did go upstairs to inform Daisha . . . about what had occurred, "for [M.M.'s] own safety." Daisha then decided to tell [] Calero about the abuse that occurred to M.M.

[Daisha testified that she] is Delilah's older sister. One day, while M.M. was playing with Delilah in the basement, Daisha went to check on them. Upon seeing the girls, she returned upstairs only to hear the two running up the stairs. Delilah was crying and "telling me [M.M.] got touched." M.M. also blurted out "I got touched." M.M. told Daisha that [Conde] would "make her do stuff

- 3 -

and put his fingers in her . . . and make her watch . . . porn." All three girls then went into [Calero's] room and woke her up to tell her.

[Mother testified that she] is M.M.'s mother. [Mother] began a romantic relationship with [Conde] when M.M. was four years old. Although [Conde] did not live in the family's home, he would come over after work every day, and sleep over during the weekend. During her relationship with [Conde], [Mother] took medication for her anxiety that would place her in a "heavy sleep." [Mother] remembered on one occasion waking up and finding M.M. in her bed. [Mother] was confused and questioned why her daughter was there. [Mother] stated that [Conde] would buy M.M. "everything . . . whatever she wanted" while he did not do the same for her other children. [Mother] first learned of the sexual abuse when DHS officials came to her home and informed her.

\* \* \*

Jillian Shainman is a forensic interviewer with the Philadelphia Children['s] Alliance (PCA). On November 3, 2020, she conducted a forensic interview with M.M. that was video[-]recorded. During the interview, M.M. disclosed the abuse she endured and identified [Conde] as her abuser.

[Calero testified that she] is the mother of Daisha and Delilah[.] Calero recalled that[,] during [Mother]'s relationship with [Conde,] he "treated [M.M.] better than [the] other kids." On October 25, 2020, M.M. was in [] Calero's home playing with Delil[]ah, when Daisha came upstairs to [] Calero's room screaming about something that M.M. had told Delil[]ah, proclaiming that [Conde] "touched" M.M. In her confusion at this revelation, [] Calero inquired if the perpetrator was [Conde] or his son. In response, M.M. clearly identified [Conde] as her abuser, telling her, "My mom was sleeping and [Conde] was putting porn on, and he was touching me down there . . . my vagina . . . he put his penis in my vagina."

Trial Court Opinion, 11/7/24, at 1-7 (citations and footnotes omitted).

On November 17, 2020, Conde was arrested and charged with the above-mentioned offenses in connection with the sexual abuse of M.M. On

January 24, 2024, Conde proceeded to a two-day jury trial. Relevant to the claims before this court, during trial Conde objected to the admission of DHS's report, which was admitted during the Commonwealth's re-direct of Calero. *See* N.T. Jury Trial (Day 2), 1/25/24, at 31-32. In particular, Conde argued that the DHS report was inadmissible and unfairly prejudicial, but the trial court overruled the objection and concluded that Conde had opened the door by questioning Calero about the contents of the report. *See id.* at 29-30. On January 25, 2025, the jury convicted Conde of the above-mentioned offenses.

The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report (PSI) and for an assessment by the Sexual Offender Assessment Board (SOAB). Ultimately, the SOAB report concluded that Conde was a sexually violent predator (SVP), but the Commonwealth opted not to pursue an official designation.

On July 25, 2024, the trial court conducted a sentencing hearing, at which the court acknowledged it had received the Commonwealth's sentencing memorandum, the PSI, Conde's mental health evaluation, and the SOAB report classifying Conde as an SVP. However, the trial court noted that the Commonwealth was not proceeding on the SVP classification, but instead was seeking a Tier III classification under Megan's Law. Ultimately, the trial court sentenced Conde to 20 to 40 years' incarceration for his conviction of rape of a child, 20 to 40 years' incarceration for his conviction of IDSI—serious bodily injury, 10 to 20 years' incarceration for his conviction of unlawful contact with a minor—sexual offenses, 5 to 10 years' incarceration for his conviction of

aggravated indecent assault of a child, and 3 years' probation for his conviction of indecent assault—person less than 13 years of age. The trial court imposed all of Conde's sentences concurrently, with exception for his sentences for unlawful contact with a minor and indecent assault—person less than 13 years old, resulting in an aggregate sentence of 30 to 60 years' incarceration, followed by 3 years' probation.

On August 2, 2024, Conde filed a timely post-sentence motion. On August 27, 2024, the trial court conducted a hearing, after which it granted Conde's request for mitigation and denied the post-sentence motion in all other respects. Consequently, on the same day, the trial court amended Conde's sentence by imposing his sentence for unlawful contact with a minor—sexual offenses to run concurrently, which resulted in a new aggregate sentence of 20 to 40 years' incarceration followed by 3 years' probation. The trial court reiterated that the Commonwealth was not seeking an SVP designation and that it did not consider SOAB's SVP finding in fashioning Conde's sentence, but that it did generally consider SOAB's report to the extent that it impacted the sentencing factors of 42 Pa.C.S.A. § 9721, including but not limited to, protection of the public. *See* N.T. Post-Sentence Motion Hearing, 8/27/24, at 2-4, 7, 9-10, 19, 21.

Conde filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Conde now raises the following claims for our review:

1. Did the [trial] court err when it denied [Conde]'s motion for judgment of acquittal where the complainant's testimony and prior statements are so inconsistent that the verdict is a product of speculation and conjecture?

2. Did the [trial] court abuse its discretion in denying [Conde] a new trial where the evidence weighed in favor of concluding that it was [Conde]'s son who had inappropriate contact with the complainant?

3. Did the [trial] court abuse its discretion when it allowed the Commonwealth to introduce[,] at trial[, testimony] that DHS deemed [Conde] the "perpetrator" in response to the defense questioning a witness about her prior statements regarding the identity of the person who abused the complainant?

4. Did the [trial] court consider an improper factor at sentencing when it treated a prior allegation that did not result in arrest or conviction as a conviction?

5. Did the [trial] court consider an improper factor at sentencing when it considered the conclusions of the [SOAB] evaluation of [Conde] over objection and without live testimony from the evaluator?

Brief for Appellant, at 5-6 (reordered for ease of disposition).

In his first claim, Conde argues that the Commonwealth presented insufficient evidence to sustain his convictions because it failed to present evidence that Conde was M.M.'s abuser. *See id.* at 52-54. Conde asserts that the "evidence against him was so unreliable and inconsistent that the . . . verdict [c]ould only be the result of speculation and conjecture, particularly with [regard to] his identification as M.M.'s abuser." *Id.* at 52. Conde contends that his challenge to witness credibility—normally raised in the context to a challenge to the weight of the evidence—rises to the level of a sufficiency challenge because the testimony was "so unreliable and

contradictory that [the] verdict" could have only been the result of speculation and conjecture. *Id.* at 52-53. Conde alleges that M.M.'s testimony is wholly incredible because: (1) she testified both that Conde never touched her vagina with his mouth, but also that he had flipped her upside-down and touched her vagina with his tongue; (2) M.M. could only remember four instances of abuse but testified the abuse happened every weeknight; (3) M.M. did not disclose the abuse to Mother because she felt threatened and afraid, but also stated she did not disclose the abuse to Mother because she was afraid of Conde hurting her; (4) M.M. testified the abuse only happened in her bed, but also that it had happened in Mother's bed, and on the couch; (5) M.M. testified that she had both seen and not seen Conde's penis; and (6) M.M. testified that Conde both vaginally penetrated her but also did not.[6] *See id.* at 53-54. Conde's claim is belied by the record.

We review Conde's sufficiency of the evidence claim under the following standard:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not [re]weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts

---

[6] We note that, based upon our review of the record, these alleged consistencies are between M.M.'s trial testimony and her PCA interview, which was admitted at trial. *See* N.T. Jury Trial (Day 1), 1/24/24, at 45-46 (PCA interview admitted and played for jury).

regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-60 (Pa. Super. 2011) (en banc) (quotation marks and citation omitted). As our Supreme Court has held, a claim that "the testimony presented to the [fact-finder] was so unreliable and contradictory that the[] verdict could only have been arrived at through speculation and conjecture . . . [is] a challenge to the sufficiency [of the evidence]." *Commonwealth v. Brown*, 52 A.3d 1139, 1157 n.18 (Pa. 2012).

Instantly, we note that Conde does not challenge any of the elements of his convictions, but solely the sufficiency of the evidence as it pertains to his identity. *See* Brief for Appellant, at 52-54. Accordingly, in the interest of brevity, we do not discuss the elements of each offense.

The trial court, in its opinion, addressed Conde's sufficiency challenge as follows:

[T]he Commonwealth produced evidence that far exceeds any conclusion that the verdict was based on mere surmise or conjecture. M.M. testified in open court in a logical, clear, and plausible manner to the abuse she had suffered at the hand of [Conde]. As the jurisprudence of the Commonwealth makes clear, there is no requirement that the government's totality of evidentiary production exhibit a one[-]hundred[-]percent

mathematically certain conclusion. The government only needs to produce evidence sufficient for a factfinder to reach the conclusion of an accused's guilt beyond a reasonable doubt, not all doubt. The testimony of M.M. established each and every element of the offenses charged, and the jury believed her testimony beyond a reasonable doubt.

Trial Court Opinion, 11/7/24, at 16.

Indeed, M.M. testified at trial that Conde was her abuser and that he repeatedly sexually assaulted her. *See* N.T. Jury Trial (Day 1), 1/24/24, at 69-105. To the extent that Conde couches his challenge as a sufficiency claim, we, as the appellate court, are still not permitted to reevaluate a witness' credibility. *See Brown*, 23 A.3d at 559-60. It is clear to this Court that there was ample evidence that allowed the jury to conclude the Commonwealth presented sufficient evidence to sustain Conde's identification as the sexual abuser, as well as each element of the offenses. *See* N.T. Jury Trial (Day 1), 1/24/24, at 71-80 (M.M. testifying Conde took her to Mother's room, anally raped her, and threatened her not to tell Mother); *id.* at 81-86 (M.M. testifying Conde, on another night, took her to Mother's room and vaginally raped her); *id.* at 88-95 (M.M. testifying that, while her siblings played in another room, Conde picked her up, lifted her upside down, and inserted his tongue into her vagina); *id.* (M.M. testifying to other instances of abuse including additional instance of anal rape and Conde inserting his fingers into her vagina). Indeed, there is no doubt that M.M. repeatedly and consistently identified Conde as her abuser. Accordingly, Conde is entitled to no relief on this claim.

In his second claim, Conde argues that his convictions were against the weight of the evidence. *See* Brief for Appellant, at 54-56. Conde's weight

claim is largely the same as his sufficiency claim, which we addressed above. **See id.** Additionally, Conde contends that the weight of the evidence demonstrates it was Conde's son, not Conde, who abused M.M. **See id.** In support of this contention, Conde asserts that M.M.'s identification of Conde is unreliable and, instead, Calero's belief that Conde's son abused M.M. should have been believed. **See id.** at 55. In particular, Conde points to Calero's testimony that "she could not believe [Conde] had committed the alleged acts and immediately thought of [Conde]'s son. Beyond that, this was not an ephemeral thought or hunch, but such a deeply held belief that she reported it to DHS when she first reported M.M.'s disclosure." **Id.** Conde posits that Calero's testimony should have been believed as "the first adult to whom M.M. disclosed her abuse" and M.M. was afraid of Conde's son, but not Conde. **Id.** at 55-56.

We review the trial court's ruling on a weight claim solely for an abuse of discretion:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Bright***, 234 A.3d 744, 749 (Pa. Super. 2020) (cleaned up).

> The trial court, in its opinion, addressed this claim as follows:
>
> [T]he Commonwealth produced the only evidence needed for the jury to find [Conde] guilty: M.M.'s testimony. As stated above, [the testimony of] the victim of sexual abuse, if believe[d] beyond a reasonable doubt, is enough to satisfy the [Commonwealth]'s burden of proof. The jury had the opportunity to view M.M.'s demeanor and to hear the tone and tenor of her voice. The jury was free to believe [all], part, or none of her testimony. The minor inconsistencies brought out by [Conde]'s trial counsel did not deem M.M.'s testimony to be incredulous, and the jury believed her beyond a reasonable doubt.
>
> Because the jury verdict is not so contrary to the evidence that it shocks the [t]rial [c]ourt's sense of justice, [Conde]'s claim is meritless, and no relief is due.

Trial Court Opinion, 11/7/24, at 13-14.

Based upon our review of the record, and the facts summarized above, we conclude that the trial court did not abuse its discretion in determining that Conde's weight claim lacked merit. ***See Bright***, ***supra***. Indeed, as the trial court summarized, there was ample evidence for the jury to conclude that M.M. had identified Conde as her abuser. Moreover, the jury was free to reconcile any conflicts in the testimony M.M. and Calero as it saw fit. Accordingly, the trial court did not abuse its discretion and Conde's weight claim fails.

In his third claim, Conde argues that the trial court abused its discretion in allowing Calero to testify that DHS had determined Conde was the "perpetrator." ***See*** Brief for Appellant, at 45-52. Conde points out that, on

cross examination, trial counsel questioned Calero about her prior statements to DHS that one of Conde's sons may have been in the perpetrator, not Conde. *See id.* at 45-46, 51. Conde posits that his trial counsel's cross examination of Calero on those statements does not open the door, on re-direct, for the Commonwealth to question Calero regarding DHS's responses to her. *See id.* at 45-46. Conde contends that the Commonwealth's re-direct, wherein the Commonwealth asked Calero to read DHS's report, was, therefore, improperly admitted evidence and an abuse of the trial court's discretion. *See id.* at 49-50. Further, Conde contends this evidence is prejudicial "because it infringes on an issue solely for the jury, witness credibility." *Id.* at 50.

In reviewing a challenge to the admissibility of evidence, we adhere to the following standard of review:

> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is[,] rather[,] the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record.

*Commonwealth v. Hernandez*, 39 A.3d 406, 411 (Pa. Super. 2012).

"All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Evidence is relevant "if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact." *Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa. Super. 2014).

However, even if evidence is relevant, the court may nonetheless exclude it if its probative value is outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. "A litigant opens the door to [otherwise] inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." ***Commonwealth v. Nypaver***, 69 A.3d 708, 716 (Pa. Super. 2013).

Relevant to our analysis, the following exchange occurred on cross-examination of Calero:

> [Defense Counsel]: And kind of going back to the beginning when the DA was asking you if [M.M.] was ever confused about who did this, to be fair, on the night that this all came out, based on what you heard, you were clear that it was [Conde's] son who had been touching her and that's why you told the DHS worker that right? You weren't trying to lie to them?
>
> [Calero]: I was—I didn't say—I didn't say it was his son. I said I wasn't sure of which person it was 'cause I couldn't believe it.
>
> [Defense Counsel]: And I understand your—your disbelief. You said, **according to what DHS wrote down**, I'm just reading you the sentence that, "[M.M.] stated that she is afraid to be in the home when the son is there." Did she tell you that?
>
> [Calero]: Yes, sir.
>
> [Defense Counsel]: Right. That's the only reason you would have said it, right?
>
> [Calero]: Yes, yes, sir.
>
> [Defense Counsel]: And you never once[,] in that initial call to DHS[,] told them that [M.M.] told you that [Conde] had assaulted her? You didn't tell them that, did you?

- 14 -

[Calero]: No, sir.

N.T. Jury Trial (Day 2), 1/25/24, at 29-30 (defense counsel questioning Calero on her statements to DHS) (emphasis added). As a result of this exchange, the Commonwealth, on re-direct, asked Calero to read from DHS's report that was generated based upon her statements to DHS. *See id.* at 31-32. In particular, Calero ultimately read a portion of the report that listed Conde as the "perpetrator." *See id.* Defense counsel objected and the trial court overruled the objection and concluded defense counsel had opened the door. *See id.* at 32.

Based upon the record, as the trial court cogently points out, Conde's trial counsel asked Calero: "According **to what DHS wrote down**, I'm just reading you the sentence, '[M.M.] stated she was afraid to be in the home when [Conde's] son is there.' Did she tell you that?" Trial Court Opinion, 11/7/24, at 21 (citing N.T. Jury Trial (Day 2), 1/25/24, at 29) (emphasis added). Trial counsel was reading directly from the DHS report that the Commonwealth introduced, for completeness, on re-direct examination. *See* N.T. Jury Trial (Day 2), 1/25/24, at 31-32 (Commonwealth introducing remaining portions of DHS report). Defense counsel's pointed questions created a false impression that Calero had told DHS it was Conde's son, not Conde, who had abused M.M. Despite this misdirection, the record, and DHS's report, make clear that Calero did not implicate Conde's son to DHS, but rather Calero did not implicate anyone in particular. *See* N.T. Jury Trial (Day 2), 1/25/24, at 29-30. Thus, defense counsel's questioning opened the door to

the DHS report and the trial court did not err or abuse its discretion in admitting the DHS report on re-direct. *See Nypaver*, *supra*. Accordingly, Conde's challenge is without merit.

In his final two claims, Conde challenges the discretionary aspects of his sentence, from which there is no automatic right to appeal. *See Commonwealth v. Austin*, 66 A.3d 798, 807-08 (Pa. Super. 2013). Rather, when an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. *Commonwealth v. Yanoff*, 690 A.2d 260, 267 (Pa. Super. 1997). Prior to reaching the merits of a discretionary sentencing issue,

> [this Court conducts] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Instantly, Conde filed a timely notice of appeal, a timely post-sentence motion, and properly included a Rule 2119(f) statement in his brief. We next consider whether he has raised a substantial question for our review.

Whether a particular issue constitutes a substantial question about the appropriateness of the sentence is a question to be evaluated on a case-by-case basis. *See Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super.

- 16 -

2001). This Court does not accept bald assertions of sentencing errors. **See Commonwealth v. Malovich**, 903 A.2d 1247, 1252 (Pa. Super. 2006). Rather, an appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. **See Commonwealth v. Ferguson**, 893 A.2d 735, 737 (Pa. Super. 2006).

Conde argues that the trial court relied upon impermissible factors, namely, Conde's prior arrests that did not result in convictions and the SOAB's determination that Conde is an SVP when no SVP designation was sought by the Commonwealth. **See** Brief for Appellant, at 36-37.

Conde's claims both raise substantial questions. **See Commonwealth v. Dodge**, 77 A.3d 1263, 1273 (Pa. Super. 2013) ("reliance on impermissible sentencing factors can raise a substantial question") (citation omitted); **Commonwealth v. Simpson**, 829 A.2d 334, 337-38 (Pa. Super. 2003) (claim that trial court relied upon impermissible factors raises substantial question).

However, despite his presentation of two substantial questions, we conclude that Conde's first challenge, asserting that the trial court improperly considered prior arrests that did not result in convictions, is waived. Importantly, Conde did not raise this challenge in his post-sentence motion or at the post-sentence motion hearing. **See** N.T. Post-sentence Motion Hearing, 8/27/24, at 1-21; **see also** Post-Sentence Motion, 8/2/24, at 1-5 (unpaginated). Therefore, this claim has not been preserved before the trial

court and is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Nevertheless, Conde has preserved his second challenge, that the trial court improperly considered the SOAB report in sentencing him, and, accordingly, we review the discretionary aspects of Conde's sentence.

We adhere to the following standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Carr*, 262 A.3d 561, 568 (Pa. Super. 2021) (citation omitted).

A sentencing judge has broad discretion in determining a reasonable penalty, and appellate courts afford the sentencing court great deference, as it is the sentencing court that is in the best position to "view the defendant's character, displays of remorse, defiance[,] or indifference, and the overall effect and nature of the crime." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (citation omitted). When imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "[A] court is required to consider the particular circumstances of the offense and the

character of the defendant." ***Commonwealth v. Griffin***, 804 A.2d 1, 10 (Pa. Super. 2002). In particular, the sentencing court should refer to the defendant's prior criminal record, his age, personal characteristics, and his potential for rehabilitation. ***Id.*** Further, "where the trial court is informed by a [PSI], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted).

At the July, 25, 2024 sentencing hearing, the trial court placed on the record the following reasons for its sentence:

> I am factoring in the [PSI and] the SOAB assessment[, e]ven though [the SVP designation is] not moving forward, it is a factor. I'm also looking at the mental health report. I have heard the[] statements that have been read into the record as well as the complainant's testimony in this matter. I see this act as being absolutely necessary to protect the community. I'm not seeing mitigation here. I understand that defense counsel has made an argument that [Conde] was a victim of a gunshot wound when he was 18 and that he donated part of his liver to help his son. I hear that. However, I have to balance the fact that there's a person here who is not admitting to what he did, that he has this in his history. Despite the fact that you're telling [me] he was nothing but a drug user and dealer, it just shows he doesn't follow the rules. I don't see that as mitigating. It's somebody who decides that he can do whatever he wants, and he reiterates it as he's talking to this Court as if this little girl made up all these stories. I don't appreciate the witness[7] being here today or that

---

[7] The trial court is referring to M.M.'s aunt ("Aunt"), who, at sentencing testified on Conde's behalf. ***See*** N.T. Sentencing Hearing, 7/25/24, at 8-11. In particular, Aunt authored a character letter, wherein she asked the trial court for leniency. ***See id.*** Aunt explained that she had been in a relationship
*(Footnote Continued Next Page)*

his family gives him access to more children. I don't consider that as a mitigating factor but as something to be aware of and terrified of, frankly.

N.T. Sentencing Hearing, 7/25/24, at 28-29.

Subsequently, at the August 27, 2024 post-sentence motion hearing, the trial court again reiterated that it had considered the mitigating factors presented by Conde and his counsel. **See** N.T. Post-Sentence Motion Hearing, 8/27/24, at 16-17. The trial court emphasized that it considered Conde's post-conviction prison calls[8] horrific and determined that such actions, coupled with Conde's refusal to show any remorse, demonstrated that he was not capable of rehabilitation. **See id.** at 17-18 (trial court discussing Conde's threats, name calling, and refusal to apologize for that behavior); **id.** at 18-19 (trial court highlighting Conde's lack of remorse, refusal to apologize for trauma M.M. had to experience, clarifying such apology would not run afoul of Conde's repeated claims of innocence). Regarding SOAB's report, the trial court stated:

> I'm not making [Conde an SVP]. . . . I have to look at is [whether] our community [is] protected. When I see [] the likelihood of him re-offending, that is what I'm looking at. I have to factor that in, the likelihood that he's going to re-offend.

_____

with Conde for the past four years and that Conde has been a positive influence in her and her children's lives. **See id.** at 8-9.

[8] At the July 25, 2024 sentencing hearing, the Commonwealth introduced Conde's post-conviction prison calls. **See** N.T. Sentencing Hearing, 7/25/24, at 20-21. In his post-conviction phone calls, Conde repeatedly talks about how he is "not going to pretend to cry . . . because he doesn't have those feelings." **Id.** Conde also engaged in name calling of the assistant district attorney, criticized the trial court for revoking his bail, and called M.M. a slut. **See id.** at 9-11, 21.

* * *

> I'm not deeming him to be [an SVP], but I'm reading a report that's telling me [he is likely to re-offend], and I have to consider the factors for the safety of the community.

N.T. Post-Sentence Motion Hearing, 8/27/24, at 8, 10.  Ultimately, the trial court agreed with Conde that the original sentence was too harsh, vacated his sentence, and reimposed it with all sentences running concurrently resulting in the above-mentioned aggregate sentence of 20-40 years' incarceration.

Upon review of the foregoing, we discern no abuse of discretion where the trial court had the benefit of a PSI and properly weighed all the sentencing factors set forth in section 9721.  **See Ventura**, **supra**.  After consideration of Conde's post-sentence motion and the subsequent hearing, the trial court vacated Conde's original sentence and imposed a more lenient sentence. Additionally, we are cognizant that a trial court may consider the contents of a SOAB report when it imposes sentencing.  **See Commonwealth v. P.L.S.**, 894 A.2d 120, 132 (Pa. Super. 2006) (SOAB assessments are provided to agency preparing PSI and, therefore, "[**SOAB assessments**] **may be utilized by trial court at sentencing**") (emphasis added); **see also Commonwealth v. Shugars**, 895 A.2d 1270, 1277 (Pa. Super. 2006) (relying on **P.L.S.**).  Accordingly, we conclude that the trial court did not abuse its discretion and, thus, Conde's claims to the contrary are without merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/16/2026</u>