J-S10042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                 :            PENNSYLVANIA
                                 :
            v.                     :
                                 :
                                 :
FRANK SCOTT MAYO           :
                                 :
           Appellant           :    No. 972 MDA 2020

Appeal from the Judgment of Sentence Entered October 9, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0005525-2015


BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                  **FILED MAY 13, 2021**

Frank Scott Mayo (Mayo) appeals from the judgment of sentence imposed by the Court of Common Pleas of Dauphin County (trial court) after a jury convicted him of two counts of simple assault.[1]  On appeal, Mayo challenges the weight of the evidence for his convictions.  We affirm.

Mayo was charged with simple assault and endangering the welfare of children for hitting two of his sons.  At his jury trial, the Commonwealth called three witnesses.  The first was Y.M., Mayo's daughter.  She testified that on August 10, 2015, she and several other of Mayo's children were staying at the apartment of Mayo's girlfriend.  Neither Mayo nor his girlfriend were at the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2701(a)(1).

apartment at the time. At some point, Y.M.'s brother and one of Mayo's other sons (A.M.) left the apartment and walked to a nearby mall. At the time of the incident, both boys were 12 years old. After they left, Mayo returned to the apartment and asked where the boys were. When he heard they were not there, he told two of his daughters to go get them. The boys soon returned to the apartment.

According to Y.M., when the boys returned, Mayo had them line up in front of him on the couch. Mayo then took off his rings and punched them in the chest. Both boys fell to the ground. Mayo told them to get back up and had them stand in different corners. Mayo then punched them in their heads and backs and even tried to kick them. When the boys fell to the ground, Mayo would lift them back up and hit them again, going back and forth between the boys as they cried. When Y.M.'s brother screamed for Mayo to stop, Mayo hit him in the eye. Mayo also hit A.M. so hard once that he flew back against the wall and scraped his back, resulting in a long scar.

Y.M. testified that the assault lasted about five minutes. Once it ended, Mayo told them to leave. As she was leaving with the boys, Mayo told them not to claim him as their father ever again. Mayo then hit A.M., causing him to hit his face on the kitchen counter. After leaving the apartment, they called Y.M.'s grandmother and told her what happened. Not long after, the police arrived at the apartment.

The Commonwealth also called A.M. as a witness. He testified that Mayo was angry with him and his brother and had them line up in front of the couch. After taking off his rings, Mayo started "swinging" and "wailing" on them, first with an open fist and then with a closed fist. A.M. testified that the blows sent the two brothers to the ground. Mayo then started to go back and forth between hitting them. A.M. tried to cover his face from the blows, estimating that Mayo hit him about 15 to 20 times. A.M. confirmed that he hit his back on something because of the force of one of Mayo's blows. He testified that Mayo injured his back so bad that he was unable to sit down in the car later. A.M. also confirmed that Mayo hit him as he left with the others. As he left the apartment, Mayo said not to claim him as his father, to which he responded, "Okay." Mayo then smacked him in the head and caused A.M. to hit his back on the kitchen counter.

Finally, the Commonwealth called Officer Mick Snyder, the police officer who responded to the apartment. He testified that when he arrived, the two brothers were still crying and shaking and appeared "terrified." Both boys had visible bruises and abrasions, with A.M. also having a scape down the middle of his back. During Officer Snyder's testimony, the Commonwealth admitted photographs of the injuries taken by the officer on the day of the incident. The officer also spoke to Mayo. According to the officer, Mayo appeared intoxicated and had a heavy odor of alcohol on him. When asked what

happened, Mayo admitted that he was upset with the boys but denied he harmed them.

After the Commonwealth rested, Mayo testified in his own defense. According to his version, he was working at his barbershop when he received a text message that his two sons were at the mall. As a result, he closed the shop and went back home. When he arrived, the boys were not there and did not arrive back until about 30 minutes later. When they returned, Mayo had them stand in front of him and began to question them about being at the mall because they were not allowed to go there alone. As Mayo questioned them, the boys began to cry. Mayo denied hitting the boys, testifying instead that he "poked" Y.M.'s brother in the head two or three times and then pushed his face. This caused the boy to fall and stick his legs up. Mayo then smacked his legs to the side. Mayo stated that he did the same thing to A.M. Beyond that, however, Mayo denied striking or kicking the two boys.[2]

The jury acquitted Mayo on the endangering charges but convicted him on the simple assault counts. For both convictions, the trial court sentenced Mayo to serve 24 months' county intermediate punishment with the first six

---

[2] Based on Mayo being the boys' father, the trial court gave the jury an instruction on justification for use of force on children by a parent or guardian. *See* 18 Pa.C.S. § 509(1) (allowing parent to use force when "the force is used for the purpose of safeguarding or promoting the welfare of the minor" and "is not designed to cause or known to create ... mental distress or gross degradation").

months on house arrest with an electronic monitor for work release. Mayo filed a post-sentence motion for a new trial, claiming that his convictions were against the weight of the evidence. After that motion was denied, he filed an appeal that was later dismissed because his counsel failed to file a brief. Mayo, however, had his direct appeal rights reinstated through a post-conviction petition for relief, following which he filed this. On appeal, he reasserts his weight of the evidence claim, arguing that the Commonwealth's evidence was unreliable, contradictory and incredible.[3]

Mayo complains that the testimony of Y.M. and A.M. was inconsistent. He first points out that they differed on certain points about what happened before Mayo disciplined the boys. First, Y.M. testified that Mayo's girlfriend did not know that the boys were at the mall; A.M. testified that she did. Second, Y.M. testified that the boys arrived after Mayo returned to the apartment; A.M. testified that they returned before Mayo. Third, Y.M. testified

_____

[3] "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." **Commonwealth v. Bright**, 234 A.3d 744, 749 (Pa. Super. 2016). "[T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Id.** (citation omitted).

that Mayo did not lecture the boys before hitting them; A.M. testified that he did.

Mayo then goes on to highlight inconsistencies between Y.M. and A.M. about Mayo discipling the boys. First, Y.M. described Mayo as hitting the boys first while seated on the couch and then in the corners; A.M. did not describe the incident in the same way. Second, Y.M. testified that A.M. kicked the boys; A.M. testified Mayo tried to kick him but missed. Third, Y.M. testified that A.M.'s face struck the kitchen counter; A.M. testified that it was his back.

The trial court explained its rejection of Mayo's challenge to the weight of the evidence supporting his simple assault convictions as follows:

> Here, the jury as factfinder heard testimony from one of the victims, [A.M.], eyewitness [Y.M], Officer Snyder, and [Mayo]. The descriptions given by the Commonwealth witnesses of the physical attacks and resulting injuries were determined by the jury to be credible and well-supported. The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. To the extent that [Mayo's] testimony was contradictory or that the Commonwealth's witnesses' testimony differed slightly from one witness to the next is of no moment, as it is a well-settled tenet that variances in testimony go to the credibility of the witnesses: a new trial is not warranted because of a mere conflict in testimony. Moreover, the fact that the Commonwealth did not call [Y.M.'s brother] to testify about the same course of events does not affect this Court's determination that no new trial is warranted; the testimony of record fully supports the verdict and, again, the witnesses that did testify were found to be trustworthy. Having had the opportunity to hear and see the evidence presented in support of the simple assault convictions, this Court has not abused its discretion in denying [Mayo's] motion for a new trial. [Mayo's] conviction in light of the weight of the evidence certainly does not shock one's sense of justice.

Trial Court Opinion, 2/25/20, at 5-6.

We agree with this analysis and find that none of the inconsistencies that Mayo points out are enough to warrant a new trial. First, that Y.M. and A.M. differed a bit on certain collateral points leading up to the assault is of little to no import. None of these inconsistencies touch on a material factual point affecting the jury's determination whether Mayo committed simple assault on his sons.

As to the assault itself, we find the inconsistencies—to the extent they are inconsistencies—to be very slight. For instance, Y.M. described the assault as beginning at the couch and then continuing when the boys are at the corners. **See** N.T., 4/13/19, at 27-28. A.M. basically described the same thing in terms of Mayo's action but said nothing about being placed in corners. **Id.** at 43-44. We attach little significance to this inconsistency, even if it could be considered one. We find the same about Mayo's point about the kicking, since both witnesses testified that Mayo tried to the kick the boys. Finally, even if Y.M. and A.M. differed on what part of his body struck the kitchen counter, both of their accounts were consistent about its circumstances and that Mayo struck A.M. Thus, we will not upset the jury's credibility determinations that Mayo intentionally caused bodily injury to the two boys. **See Commonwealth v. Scott**, 146 A.3d 775, 778 (Pa. Super. 2016) ("We will not disturb the factfinders' credibility findings, which are supported by the evidence of record.").

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/13/2021