J-S05024-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NIKYLE GILLIAM | : | |
| | : | |
| Appellant | : | No. 212 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 6, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003680-2021

BEFORE: BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.: **FILED FEBRUARY 18, 2026**

Nikyle Gilliam (Appellant) appeals from the judgment of sentence imposed following his nonjury convictions of one count each of sexual assault, indecent assault, and indecent exposure.[1] After careful review, we affirm Appellant's judgment of sentence.

The trial court summarized the relevant factual history underlying this appeal:

> [T]he complainant, T.C., testified that she matched with Appellant … on the Tinder app in January 2021. At some point, they exchanged phone numbers, and [T.C.] invited [Appellant] to her apartment for a first meeting on January 26, 2021. Appellant arrived at T.C.'s home around 4:35 p.m. After showing Appellant around the apartment, T.C. made popcorn[,] and they started watching a movie. Both Appellant and T.C. sat on the couch. They

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3124.1, 3126(a)(1), 3127.

smoked marijuana, which T.C. bought from Appellant, and cuddled on the couch. After they stopped cuddling, Appellant pulled his penis out of his pants, grabbed T.C.'s hand, and tried to get her to touch his penis. T.C. told Appellant that she did not want to touch him, and that she wanted to get to know him better before engaging in sexual activity with him. [T.C.] started crying, and asked Appellant to leave because "it kind of freaked her out, caught her off guard." Appellant did not leave. [Appellant] tried to pull T.C. on top of him, and she pulled away. At some point, Appellant removed T.C.'s leggings. T.C. testified that at this point she was "in distress" and was not sure what to do. [T.C.] left the living room and went into the bathroom, then to her bedroom to try to find pants. She had difficulty finding clothing because she was unable to think straight.

Appellant followed T.C. into her bedroom and asked her if she had any [sexually transmitted infections (STIs)]. [T.C.] told [Appellant] that she had genital herpes, which she hoped would get him to leave. Appellant told her that "herpes or not, I want it." [Appellant] grabbed [T.C.] by the upper arms, and she struggled to get away. T.C. was not able to break free, and Appellant moved [T.C.] to the bed, pulled down her underwear, and vaginally penetrated her with his penis. … [A]t this point[, T.C.] "gave up on herself" and "kind of just let it happen," out of fear and shock. [T.C.] remembered Appellant asking if she wanted him to ejaculate inside of her. She said no, but Appellant did it anyway. T.C. ran to the bathroom because she felt sick. Appellant mentioned food and heading to his car before leaving abruptly.

T.C. removed the sheets from her bed and put them into a pillowcase; she did not wash them. T.C. was unable to view Appellant's Tinder profile after he left, she assumed because he unmatched her [via the app]. [Following the incident, T.C.] did exchange text messages with [Appellant] about her missing [Amazon] Echo Dot [device], which she believed [Appellant] stole, and called or texted with [Appellant] on a few other occasions…. T.C. testified that she remembered being told by a judge not to delete any of the text messages with Appellant, but [she maintained] that the phone with those messages was broken by the time of trial.

On January 28, 2021, T.C. went to Chestnut Hill Hospital to get tested for STIs, and in hope of getting a rape kit. [Hospital

- 2 -

staff] tested [T.C.] for some STIs, but she did not think they tested her for HIV. T.C. testified that although she asked for a rape kit, one was not done. Hospital personnel told her they called the police, but after several hours[,] no officer had arrived. On February 1, 2021, [T.C.] contacted the police. An officer responded to [T.C.'s] apartment, and then took her to the Special Victims Unit to speak to a detective. [T.C.] had notes written down about the incident for her conversation with the responding officer. T.C. asked the detective if she should get tested for HIV but did not remember [the detective's] answer. [T.C.] testified that she went to the Special Victims Unit testing site, but it was not open.

Trial Court Opinion, 4/26/24, at 1-3 (citations to record and some brackets omitted; some paragraph breaks added).

The Commonwealth charged Appellant, via criminal information, with the above-described offenses, as well as with rape by forcible compulsion, unlawful restraint, simple assault, recklessly endangering another person, and theft by unlawful taking.[2] Appellant waived his right to a jury trial, and the case proceeded to a bench trial on June 26, 2023. The trial court found Appellant guilty of sexual assault, indecent assault, and indecent exposure, and acquitted him of the remaining offenses. The trial court deferred sentencing for the preparation of a pre-sentence investigation report.

On August 22, 2023, prior to sentencing, Appellant filed a motion for extraordinary relief, challenging his convictions as against the weight of the evidence. The trial court denied Appellant's motion for extraordinary relief on

_____

[2] 18 Pa.C.S.A. §§ 3121(a)(1), 2902(a)(1), 2701, 2705, 3921.

December 6, 2023. On the same date, the trial court sentenced Appellant to an aggregate term of 2½ to 6 years in prison, followed by 3 years' probation.

Appellant filed a timely notice of appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.[3]

On appeal, Appellant raises the following issues for review:

I. Whether the evidence was insufficient as a matter of law as to sexual assault, indecent assault, and indecent exposure[?]

II. Whether the verdict was against the weight of the evidence[?]

Appellant's Brief at 7 (issues renumbered).

In his first claim, Appellant contends the evidence presented at trial was insufficient to support his convictions. *See id.* at 18-24. Concerning his

_____

[3] Subsequently, on August 23, 2024, Appellant's prior appellate counsel, Jules N. Szanto, Esquire (Attorney Szanto), filed in this Court a petition to withdraw from representation and a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). This Court concluded the substance of Attorney Szanto's *Anders* brief was defective and remanded the matter for Attorney Szanto to include the relevant notes of testimony in the certified record, and to file either a proper *Anders* brief or an advocate's brief. *See Commonwealth v. Gilliam*, 335 A.3d 369, 212 EDA 2024 (Pa. Super. filed Feb. 28, 2025) (unpublished memorandum). While Attorney Szanto obtained the pertinent notes of testimony, the substance of his second *Anders* brief remained deficient. Again, we remanded for Attorney Szanto to file a proper *Anders* brief or an advocate's brief. *See Commonwealth v. Gilliam*, 339 A.3d 402, 212 EDA 2024 (Pa. Super. filed Apr. 14, 2025) (unpublished judgment order). Attorney Szanto once again failed to comply with this Court's directives. Accordingly, this Court vacated Attorney Szanto's appointment, remanded for the appointment of new counsel, and directed the trial court to take further action as required regarding the withholding of counsel fees. Order, 5/27/25.

The trial court appointed Peter Levin, Esquire (Attorney Levin), as appellate counsel. Attorney Levin filed an advocate's brief on Appellant's behalf, and the Commonwealth filed a new appellee's brief.

sexual assault conviction, Appellant claims the only evidence of sexual intercourse offered by the Commonwealth was the testimony of T.C. *Id.* at 20. Appellant faults the Commonwealth for failing to provide physical evidence, and for failing to repair T.C.'s cell phone in order to recover text messages between her and Appellant. *Id.* Appellant again points to what he believes are key inconsistencies in T.C.'s description of the events, and asserts that T.C.'s testimony cannot credibly establish her lack of consent. *Id.* at 20-21.[4]

As to his indecent assault conviction, Appellant reiterates his assertion that the Commonwealth did not establish a lack of consent. *Id.* at 21-22. Finally, as to his indecent exposure conviction, Appellant claims the Commonwealth failed to establish that Appellant knew or should have known his conduct would be likely to offend, affront, or alarm T.C. *Id.* at 23. According to Appellant, "[t]he nature of their planning and messages in general, combined with the spooning[,] shows that T.C. and Appellant's intentions were a quick hookup." *Id.* In sum, Appellant argues, "the evidence

_____

[4] The trial court declined to address Appellant's sufficiency challenge, as his court-ordered Rule 1925(b) concise statement did not specify the charges or elements he intended to challenge. *See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) ("In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient."). While we agree that Appellant's Rule 1925(b) concise statement is deficient, we decline to deem his sufficiency challenge waived, in light of our removal of Attorney Szanto from this case.

presented was so contradictory and unbelievable that the elements of the offenses were not made out and the verdict was insufficient as a matter of law." *Id.* at 24.

We adhere to the following standard of review:

> When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to accord to each witness's testimony and to believe all, part or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Steele*, 234 A.3d 840, 845 (Pa. Super. 2020) (internal citations, quotation marks, and brackets omitted).

The Crimes Code defines sexual assault as follows:

> Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S.A. § 3124.1. Pertinently, "sexual intercourse," "[i]n addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." *Id.* § 3101.

Appellant was also convicted of indecent assault under section 3126(a)(1), which provides as follows:

**(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

(1) the person does so without the complainant's consent[.]

*Id.* § 3126(a)(1). "Indecent contact" is "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." *Id.* § 3101.

Finally, "[a] person commits indecent exposure if that person exposes his or her genitals in any public place or in any place where there are present other persons under circumstances in which he … knows or should know that this conduct is likely to offend, affront or alarm." *Id.* § 3127(a).

Instantly, T.C. testified during the bench trial[5] that she first met Appellant on Tinder. N.T., 6/26/23, at 9. T.C. testified that on January 26, 2021, she invited Appellant to her home, and he arrived at about 4:35 p.m. *Id.* at 10. T.C. and Appellant made popcorn, smoked marijuana, and started watching a movie together. *Id.* at 11; *see also id.* at 38-39 (T.C.

---

[5] T.C. was the sole witness to testify during the bench trial. The parties entered several stipulations: 1) a search warrant revealed T.C.'s messages with Appellant on the Tinder app, and Appellant's phone number was connected to his Tinder account; 2) Officer Brion Walsh was the officer who responded to T.C.'s 911 call for the report of a rape; 3) Appellant was arrested without incident at his home; and 4) T.C.'s mother was a prompt complaint witness, but the discovery did not contain a witness interview. *See* N.T., 6/26/23, at 74-75.

acknowledging that she and Appellant cuddled on the couch for a few minutes). According to T.C., "shortly after that[,] during the movie is when [Appellant] started playing with his penis. He pulled his penis out." *Id.* at 11. T.C. described Appellant "trying to force her to play with [his penis]" grabbing her hands and moving them to his penis. *Id.* at 12; *see also id.* at 38 (T.C. confirming that Appellant began masturbating in front of her while they watched a movie on the couch). T.C. explained to Appellant that she wanted to get to know him prior to engaging in sexual activity, and that she was uncomfortable. *Id.* at 12-13. T.C. then asked Appellant to leave, but he refused. *Id.* at 13.

Subsequently, Appellant tried to pull T.C. on top of him, but T.C. was able to free herself. *Id.* T.C. testified that by this time, Appellant had removed her leggings. *Id.* at 14. T.C. went to the bathroom, then into her bedroom to locate a pair of pants. *Id.* at 15. Appellant followed T.C. into the bedroom. *Id.* T.C. told Appellant that she had an STI, hoping that he would leave her alone; Appellant responded that he did not care. *Id.* at 15-16.

T.C. testified that a "tussle" ensued, during which Appellant gripped both of T.C.'s arms and forced her onto her bed. *Id.* at 17-18. T.C. stated, "[Appellant] got me on my back on the bed, and he put my legs up and pulled my underwear down, and he penetrated [me] vaginally with his penis." *Id.* at 18. T.C. recalled Appellant asking her if she wanted him to ejaculate inside of her, and she responded in the negative. *Id.* Appellant did so anyway. *Id.*

T.C. testified that she felt nauseous and went into her bathroom. *Id.* at 19. Appellant came into the bathroom and "wiped his penis off with a tissue…." *Id.* According to T.C., Appellant then mentioned wanting to pick up food and "left abruptly." *Id.* at 20. T.C. was unable to access Appellant's Tinder profile following the incident. *Id.* at 20-21.

Upon review, we conclude that the evidence presented at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to support each of Appellant's convictions. The trial court, as fact finder, found that T.C.'s testimony concerning the assault was credible. *Id.* at 93 (trial court stating, "I listened to the testimony and I believe the complainant"); *see also* Trial Court Opinion, 4/26/24, at 5 (finding T.C.'s testimony was credible and consistent). It is well settled that "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa. Super. 2006).

T.C.'s testimony established that she did not consent to **any** sexual contact with Appellant, and that she specifically told him she did not wish to engage in sexual contact. T.C.'s testimony also established that Appellant physically forced T.C.'s hands to his penis. The testimony also established that Appellant later grabbed T.C. by the arms, forced her onto her bed after a struggle, and vaginally penetrated her. Thus, the evidence adduced at trial

was sufficient to sustain Appellant's convictions of sexual assault, indecent assault, and indecent exposure. *See Commonwealth v. Andrulewicz*, 911 A.2d 162, 166-67 (Pa. Super. 2006) (concluding evidence was sufficient to establish sexual assault, indecent assault, and indecent exposure, where the appellant penetrated the complainant's vagina, "grasped her buttocks," and exposed himself to the complainant while masturbating and watching pornographic material). Accordingly, Appellant's sufficiency challenge is without merit.

In his second claim, Appellant argues the verdict was against the weight of the evidence, based on "contradictions and actions (and inactions) that just do not make sense from [T.C.]." Appellant's Brief at 15. Appellant points to the following "contradictions and actions":

- T.C. first stated her leggings were removed in the living room, but she later stated Appellant took off her pants in the bedroom;

- T.C. first stated she and Appellant talked about getting food after the alleged assault, but T.C. later stated she did not remember the conversation;

- T.C. testified that she invited Appellant to her home to get to know him, but "it seems like [T]inder was being used as a way to find a hookup, rather than to get to know someone in their residence[;]"

- T.C. did not attempt to repair her broken phone, which contained relevant text messages; and

- T.C. waited six days to report the assault to police.

*Id.* at 15-17. According to Appellant, these inconsistencies render the totality

of T.C.'s testimony incredible. *Id.* at 17.

Our standard of review is well settled:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Bright*, 234 A.3d 744, 749 (Pa. Super. 2020) (citation

omitted); *see also Commonwealth v. Roane*, 204 A.3d 998, 1001 (Pa.

Super. 2019) ("A reversal of a verdict is not necessary unless it is so contrary

to the evidence as to shock one's sense of justice." (citation omitted)). "The

weight of the evidence is exclusively for the finder of fact, who is free to

believe all, none, or some of the evidence[,] and to determine the credibility

of the witnesses. Resolving contradictory testimony and questions of

credibility are matters for the finder of fact." *Commonwealth v. Salinas*,

307 A.3d 790, 795 (Pa. Super. 2023) (citations and quotation marks omitted).

In its opinion, the trial court considered Appellant's weight claim, and

concluded that it lacks merit:

**This** [c]**ourt considered those contradictions** along with the whole of T.C.'s testimony and the amount of time that passed between the incident, preliminary hearing, and trial, **and found T.C. to be credible**. In his [pre-sentence motion for

- 11 -

extraordinary relief], Appellant noted that T.C. admitted for the first time at trial that she and Appellant cuddled prior to the assault, that she made inconsistent statements regarding when Appellant took off her leggings, and that she testified that she went to the Special Victims Unit testing site on a Sunday[,] but it was in fact on a weekday.  The fact that, roughly two[-]and[-]a[-]half years after the assault, [T.C.] had a different memory of certain details, and misremembered the day of the week, is not so inconsistent as to call her credibility into question, nor does this [c]ourt's credibility determination "shock one's sense of justice." **T.C. testified credibly and consistently** for the majority of the trial.  This [c]ourt determined that she was telling the truth with respect to whether or not she consented to sexual activity with Appellant[.  The court stated on the record,] "I listened to the testimony and I believe the complainant, but I have to look at this through the guise of beyond a reasonable doubt.  There were some inconsistencies that came about that are natural." Therefore, the inconsistent statements made by T.C. did not rise to the level required to set aside the verdict as against the weight of the evidence.

The rest of Appellant's motion [for extraordinary relief] argued that T.C.'s decision to meet Appellant for the first time at her home after matching with him on a dating app and calling him "fine a.f.[,]" and her behavior after the assault—including waiting 48 hours to go to the hospital, waiting additional time before contacting the police, writing notes to prepare for her meeting with the police, and texting and speaking with Appellant on the phone—were inconsistent with the encounter being nonconsensual.  This [c]ourt fully considered that evidence, as well as defense counsel's arguments, at trial, and determined that it did not outweigh T.C.'s testimony that she *told* Appellant she did not want to engage in sexual activity with him once he was inside her apartment.  As discussed above, this [c]ourt, in its role as factfinder, found that testimony to be credible.

Trial Court Opinion, 4/26/24, at 4-6 (italics in original; bold emphasis added; citations to record omitted).

Upon review, we discern no abuse of the trial court's discretion in denying Appellant's weight claim.  The trial court, as finder of fact, was "free

to believe all, none, or some of the evidence" and to assess the credibility of the witnesses. **Salinas**, 307 A.3d at 795. Appellant asks us to reassess the credibility of T.C.'s testimony, which is a task we may not undertake on appeal. **See id.** We will not disturb the trial court's exercise of discretion in upholding the verdict, which is supported by the record and does not "shock one's sense of justice." **Roane**, 204 A.3d at 1001. Accordingly, Appellant's second claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/18/2026